BOOK 5025 PAGE 984

This Document prepared by:
Charles E. Griffith, III
GRIFFITH AND STOKES

## Dedication of Easement and Agreement

For and in consideration of the payment of thirty-five thousand dollars ($35,000.00) cash in hand paid and the mutual benefits that will accrue by reason of the hereinafter described improvements and for the additional consideration hereinafter set out, the undersigned do hereby grant, bargain, sell, transfer and convey unto Colonial Pipeline Company (Colonial) its successors and assigns, a permanent easement described as follows:

All those certain strips of land situated in the 3rd, formerly the 2nd Civil District, Davidson County, Tennessee; said strips being 50 feet in width and lying 25 feet either side of the following described centerlines:

> Beginning at a point, said point being N 32° 40' W, 33 feet more or less, from the northerly Right-Of-Way line of Murray Lane; said point of beginning being 10 feet more or less, easterly as measured at right angles, from Colonial Pipeline Company's existing line;
>
> Thence through the lands of the Grantors along a line 10 feet more or less, easterly from and parallel to said pipeline for the following seven courses and distances: N 32° 40' W, 2072 feet; N 69° 51' W, 563 feet; N 87° 47' W, 48 feet; S 76° 59' W, 604 feet; N 85° 30' W, 246 feet; S 82° 48' W, 152 feet; N 89° 22' W, 122 feet;
>
> Thence crossing Colonial Pipeline Company's existing pipeline S 65° 54' W, 69 feet to a point; said point being 20 feet more or less, southerly, as measured at right angles, from Colonial Pipeline Company's existing pipeline;
>
> Thence continuing through the lands of the grantors along a line 20 feet more or less, southerly from and parallel to said pipeline the following 2 courses and distances: S 87° 36' W, 21 feet; S 89° 03' W, 55 feet more or less, to a point of exit, said point of exit being in the easterly Right-Of-Way line of Donelson Pike, 20 feet more or less, southerly as measured along said Right-Of-Way line of Donelson Pike from Colonial Pipeline Company's existing pipeline;
>
> Thence continuing across said Donelson Pike, S 89° 03' W, 89 feet more or less, to a point of re-entry to grantor's land, said point of re-entry being in the westerly Right-Of-Way line of Donelson Pike, 56 feet more or less, southerly, as measured along said Right-Of-Way line of Donelson Pike from a fence corner of grantor's land;

I hereby swear or affirm that the actual consideration for true value of this transfer, whichever is greater, is $35,000.00 Affiant _____

Subscribed and sworn to before me this _____ day of MAY 1976.

Notary Public _____

Thence through the lands of said grantors, along a line 20 feet more or less, southerly from and parallel to said Colonial Pipeline Company's existing pipeline for the following 24 courses and distances: S 89° 03' W, 37 feet more or less; N 84° 10' W, 282 feet; S 84° 02' W, 306 feet; S 60° 05' W 236 feet; S 70° 52' W, 125 feet; N 88° 38' W, 236 feet; N 78° 54' W, 177 feet; N 64° 03' W, 102 feet; N 04° 42' E, 558 feet; N 37° 29' W, 139 feet; N 07° 42' E, 586 feet; N 69° 55' W, 891 feet; N 85° 03' W, 1035 feet; N 79° 42' W, 235 feet; N 89° 28' W, 69 feet; S 55° 17' W, 89 feet, N 81° 55' W, 331 feet; N 79° 09' W, 162 feet; N 72° 40' W, 318 feet; N 79° 19' W, 361 feet; N 86° 58' W, 118 feet; N 79° 42' W, 335 feet; S 76° 01' W, 48 feet; S 06° 49' W, 337 feet;

Thence continuing along a line 5 feet more or less, southerly from and parallel to said pipeline S 57° 15' W, 68 feet more or less, to a point of exit. Said point being in the easterly Right-Of-Way line of McGavock Pike, said point of exit being 6 feet, more or less, southerly, as measured along said Right-Of-Way line of McGavock Pike from Colonial Pipeline Company's existing pipeline;

Thence continuing across said McGavock Pike, S 57° 15' W, 87 feet, more or less, to a point of re-entry to grantors land said point of re-entry being on the westerly Right-Of-Way line of McGavock Pike, said point of entry being 11 feet, more or less, southerly as measured along said Right-Of-Way line of McGavock Pike from fence corner, being the intersection of the southerly Right-Of-Way line of Dabbs Avenue with the westerly Right-Of-Way line of McGavock Pike;

Thence continuing along said line 5 feet, more or less, southerly from and parallel to said existing pipeline, S 57° 15' W, 71 feet, more or less, to a point, said point being 20 feet, more or less, southerly as measured at right angles from Colonial Pipeline Company's existing pipeline;

Thence continuing through the lands of the Grantor, along a line 20 feet, more or less, southerly from and parallel to said existing pipeline for the following seven courses and distances; N 84° 39' W, 486 feet; N 82° 57' W, 582 feet; S 74° 14' W, 700 feet; S 74° 28' W, 647 feet; S 73° 05' W, 168 feet; S 75° 15' W, 543 feet; N 59° 59' W, 71 feet, more or less, to a point of exit, said point of exit being in the southerly Right-Of-Way line of Dabbs Avenue, 28 feet more or less, westerly, as measured along said Right-Of-Way line of Dabbs Avenue from Colonial Pipeline Company's existing pipeline;

Thence continuing across said Dabbs Avenue, N 59° 59' W, 100 feet, more or less, to a point of re-entry to Grantors land, said point of re-entry being on the northerly Right-Of-Way line of Dabbs Avenue, said point of entry being 28 feet more or less, westerly, as measured along said Right-Of-Way line of Dabbs Avenue from Colonial Pipeline Company's existing pipeline;

Thence continuing along a line 20 feet, more or less, southerly from and parallel to said pipeline the following two courses and distances: N 59° 59' W, 892 feet, more or less; N 14° 59' W, 14 feet;

Thence continuing through the lands of the Grantors, along a line 10 feet, more or less, southerly from and parallel to said Colonial Pipeline Company's existing pipeline, N 59° 59' W 87 feet, more or less, to a point of exit on the westerly property line of said Grantors; said property line being the easterly Right-Of-Way line of Briley Parkway, being 9 feet, more or less, southerly as measured along said Right-Of-Way line from a fence corner post of said Grantors land.

In addition, Colonial is hereby granted a temporary construction easement thirty (30) feet wide and located on the north side of the above easement from Murray Lane running in a north and westerly direction until the easement crosses an existing pipeline, approximately 203 feet east of Donelson Pike. Thence, said construction easement will extend on the southerly side of said permanent easement except as otherwise shown on the attached Exhibit "A". Said easement shall lapse upon completion of construction.

Colonial recognizes that certain portions of the easement granted hereunder encroaches upon existing T.V.A. and other public utility easements and assumes responsibility for coordinating its construction with the holders of such existing easements and also warrants that it will receive permission for such encroachment and agrees to hold Authority harmless for failure to receive same.

This conveyance includes the right of Colonial Pipeline Company, its servants and agents to construct, operate, maintain, repair, replace and inspect its liquid petroleum products pipeline within the limits of the aforedescribed easement or right-of-way.

To have and to hold said easement or right-of-way to Colonial Pipeline Company, its successors and assigns forever. We do hereby covenant with said Colonial Pipeline Company that we are lawfully seized and possessed of said land in fee simple and have a good right to make this conveyance.

Colonial Pipeline Company hereby covenants that upon completion of construction it will restore the hereinabove described property to its original condition, or as near thereto as is reasonably possible. The Metropolitan Nashville Airport does not waive any claim for damage in any manner for the negligence of any agent, representative or contractor for Colonial Pipeline Company during the construction of any of the aforesaid improvements.

As further consideration for the granting of this easement, Colonial Pipeline Company agrees to the following:

(1) Colonial Pipeline agrees to defend and to hold the Metropolitan Nashville Airport Authority free and harmless from loss from each and every claim and demand of whatever nature, made on behalf of or by any person or persons, for any act or omission on the part of Colonial, its agents, servants, employees, suppliers, constructors or tenants. It is the intention that Colonial shall, at all times, and under all circumstances, hold the Metropolitan Nashville Airport Authority free and harmless from any damages or judgments resulting as aforesaid, by reason of any accident or injury to person or property occurring on the premises or improvements thereon, or on any other property now owned or subsequently purchased by the Metropolitan Nashville Airport Authority and on which Colonial has located any facilities, except such as may be caused by the Metropolitan Nashville Airport Authority, its agents, servants, or employees.

In addition to the above, Colonial agrees to deliver to the Metropolitan Nashville Airport Authority, upon the execution of this Agreement, certificates of a continuing public liability and property damage insurance policy satisfactory to the Metropolitan Nashville Airport Authority, indemnifying and holding the Metropolitan Nashville Airport Authority and its Board of Commissioners harmless against any and all claims arising out of the construction and subsequent use of the demised premises, including all of its facilities now located on property owned by the Metropolitan Nashville Airport Authority. Colonial further agrees to add to the policy all easements located on property as such is subsequently acquired by the Metropolitan Nashville Airport Authority. Such insurance shall be in the minimum amount of not less than five hundred

thousand dollars ($500,000.00) for each person, limited to one million dollars ($1,000,000.00) for each occurrence of personal injuries and five hundred thousand dollars ($500,000.00) for property damage. Colonial shall keep the same in force so long as Colonial uses any easements on Airport Authority property.

If Colonial shall at any time fail to insure or keep insured as aforesaid, the Metropolitan Nashville Airport Authority may do all things necessary to effect or maintain such insurance, and all monies expended by it for that purpose shall be repayable by Colonial, in the month the premium or premiums are paid by the Metropolitan Nashville Airport Authority.

(2) All construction will be completed according to the requirements of existing codes and regulations of the Metropolitan Government of Nashville and Davidson County, Tennessee and in compliance with Part 77 of the Federal Aviation Regulations. The plans and specifications for this construction and all subsequent construction must first be approved by the Metropolitan Nashville Airport Authority, which approval shall be evidenced by a letter to Colonial from Metropolitan Nashville Airport Authority's Executive Director. Failure to reach agreement on plans and specifications shall cause an immediate termination of this Agreement and Easement. Colonial shall execute and deliver to the Metropolitan Nashville Airport Authority within thirty (30) days from the date hereof, and prior to construction, a bond in form and with one or more sureties satisfactory to the Metropolitan Nashville Airport Authority against all mechanics' and other liens which may arise or be created in the construction of its improvements, and providing further that when completed, the said improvements and premises shall be free from any and all liens Colonial will secure all necessary permits, and

licenses from any governmental authority including any right or license needed to cross and/or tunnel public street right-of-ways.

(3) Colonial will relocate its easements, either those existing on property now owned or hereafter acquired by the Metropolitan Nashville Airport Authority, at its sole cost and expense upon notification by the Metropolitan Nashville Airport Authority that its lines interfere with the expansion, development, and/or construction undertaken or to be undertaken by the Metropolitan Nashville Airport Authority, its successors, assigns, agents, or employees.

(4) Colonial agrees to operate in such a way as to fully protect the Airport and its environs from any environmental pollution either through the air or water. Colonial further agrees to operate in accordance with Metropolitan Ordinance No. 68-554, entitled "An Ordinance Amending the Metropolitan Code, Chapter 4, Subchapter a, by Providing for Air Pollution Control Within the Metropolitan Government Area," Colonial further agrees to abide by all rules and regulations and administrative orders issued by the State Stream Pollution Control Board or other State agency responsible for regulating environmental pollution. Colonial further agrees to obey all rules, regulations and orders relating to environmental pollution promulgated by the Federal Government, and specifically those promulgated under Public Law 91-258, 91st Congress, entitled: "Airport and Airway Development Act of 1970."

(5) Colonial, for itself, its successors in interest, and grantees, as part of the consideration hereof, does hereby covenant and agree, as a covenant running with the land, that in the event facilities are constructed, maintained, or otherwise operated on the said property described in these easements, for a purpose for which a Department of

Transportation program or activity is extended or for another purpose involving the provision of similar services or benefits, it shall maintain and operate such facilities and services in compliance with all requirements imposed pursuant to Title 49, Code of Federal Regulations, Department of Transportation, Subtitle A, Office of the Secretary, Part 21, Nondiscrimination in Federally-assisted programs of the Department of Transportation-Effectuation of Title VI of the Civil Rights Act of 1964, and as said Regulations may be amended.

Colonial, for itself, its successors in interest and grantees does hereby further covenant and agree as a covenant running with the land, that (1) no person on the grounds of race, color, age, sex, or national origin shall be excluded from participation in, denied the benefit of, or be otherwise subjected to discrimination in the use of said facilities, (2) that in the construction of any improvements on, over, or under such land and the furnishing of services thereon, no person on the grounds of race, color, age, sex, or national origin shall be excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination, (3) that it shall use the premises in compliance with all other requirements imposed by or pursuant to Title 49, Code of Federal Regulations, Department of Transportation, Subtitle A, Office of the Secretary, Part 21, Nondiscrimination in Federally-assisted programs of the Department of Transportation-Effectuation of Title VI of the Civil Rights Act of 1964, and as said Regulations may be amended.

(6) In the event of breach of any of the above covenants, the Metropolitan Nashville Airport Authority shall have the right to re-enter said land and the above described easement shall thereupon revert to and vest in and become the absolute property of the Metropolitan Nashville Airport Authority and its assigns.

EXHIBIT A

(7) The Metropolitan Nashville Airport Authority reserves unto itself, its successors and assigns, for the use and benefit of the public, a right of flight for the passage of aircraft in the airspace above the surface of the easement and of the real property, hereinafter described, together with the right to cause in said airspace such noise as may be inherent in the operation of aircraft, now known or hereafter used, for navigation of or flight in the said airspace, and for use of said airspace for landing on, taking off from, or operating on the Nashville Metropolitan Airport.

(8) The Metropolitan Nashville Airport Authority expressly agrees for itself, its successors and assigns, to restrict the height of structures, objects of natural growth and other obstructions in the described easement, and real property to a height of not more than that prescribed in Part 77 of the Federal Aviation Regulations.

(9) The Metropolitan Nashville Airport Authority expressly agrees for itself, its successors and assigns, to prevent the use of the easement and real property which would interfere with or adversely affect the operation or maintenance of the Nashville Metropolitan Airport or otherwise constitute an airport hazard.

In witness whereof, the parties have executed this document on this the _14th_ day of _MAY_, 1976.

APPROVED AS TO FORM  
AND LEGALITY

_Charles E. Hyder_  
Griffith and Stokes

METROPOLITAN NASHVILLE  
AIRPORT AUTHORITY

By _[signature]_  
Chairman, Board of Commissioners

_[signature]_  
Executive Director

WITNESS:  
_[signature]_  
Director, Finance and Administration

WITNESS:  
_[signature]_  
ASSISTANT SECRETARY

COLONIAL PIPELINE COMPANY

By _Glenn H. Giles_  
VICE PRESIDENT

APPROVED:  
Description & Terms  
_RFD_

IDENTIF. REFERENCE:  
MAY 17 2 21 PM '76  
FELIX Z. WILSON II REGISTER  
DAVIDSON COUNTY, TENN.

D49541

MAY 17'76 CONV    35,000.00  
MAY 17'76 S'TAX  
MAY 17'76 PR'FEE  
MAY 17'76 MISC

Authorized, pursuant to Board of Commissioners'  
R# 76-9 dated 3/19/76

_[signature]_  
Secretary

B*   91.00  
B*   .50  
B*   20.00     *   111.50

-9-

BOOK 5025 PAGE 993



RECORDER'S MEMO:
Legibility of Writing, Typing or Printing in This
Document Unsatisfactory When Received.