# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| COLONIAL PIPELINE COMPANY ) | |
| ) | |
| *Plaintiff* ) | |
| ) | Case No. 3:20-cv-00666 |
| v. ) | |
| ) | Judge William L. Campbell, Jr. |
| METROPOLITAN NASHVILLE ) | Magistrate Judge Alistair E. Newbern |
| AIRPORT AUTHORITY; and ) | JURY DEMAND |
| AECOM TECHNICAL SERVICES, INC. ) | |
| ) | |
| *Defendants* ) | |

## COLONIAL PIPELINE COMPANY'S OPPOSITION AND MEMORANDUM OF LAW REGARDING PARTIAL MOTION TO DISMISS

Colonial Pipeline Company ("Colonial") opposes Metropolitan Nashville Airport Authority's ("MNAA") motion to dismiss Colonial's breach of contract claim for failure to state a claim upon which relief can be granted. Colonial has filed an Amended Complaint (ECF No. 26) which, among other things, moots MNAA's motion. The Amended Complaint clarifies and adds relevant facts demonstrating MNAA's breach, including facts as to MNAA's deficiencies in performance and breach of the implied covenant of good faith and fair dealing. Because MNAA's motion is moot, because Colonial's Amended Complaint adequately states a claim for breach of the Easement Agreement, and because MNAA's attempt to label Colonial's breach of contract claim as a tort claim fails, MNAA's motion should be denied.

### ARGUMENTS

A. <u>The Court Should Deny MNAA's Motion as Moot.</u>

"The filing of an amended complaint supersedes an original complaint, rendering an original complaint a nullity in the record and *rendering a motion to dismiss the original complaint moot.*" *Healthcare Co. Ltd. v. Upward Mobility, Inc.*, No. 1:17-CV-264-SKL, 2018

WL 10158860, at *1 (E.D. Tenn. Jan. 18, 2018) (emphasis added) (citing *B & H Med., L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 267 n.8 (6th Cir. 2008)); see also *Pinks v. Lowe's Home Ctrs., Inc.*, 83 F. App'x 90, 90 (6th Cir. 2003) (noting the district court denied as moot defendant's motion to dismiss after plaintiff filed an amended complaint); *City of Morristown v. AT&T Corp.*, 206 F. Supp. 1321, 1325, 1340 (E.D. Tenn. 2016) (denying defendants' motion to dismiss as moot because it addressed the initial complaint rather than the amended complaint); *Gibson v. Mortg. Elec. Registration Sys., Inc.*, No. 11-2173-STA, 2012 WL 1601313, at *9 (W.D. Tenn. May 7, 2012) ("Courts in this Circuit and others will deny as moot Rule 12 motions … after a plaintiff subsequently files an amended complaint." (footnote omitted)).

Because Colonial has filed the Amended Complaint, MNAA's partial motion to dismiss Colonial's original complaint is moot and the Court should deny it as such.

  B. <u>Colonial's Amended Complaint States a Claim for Breach of the Express Provisions of the Easement Agreement.</u>

To prevail on a breach of contract claim, a plaintiff must prove "the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *Hixson v. Am. Towers LLC*, 593 S.W.3d 699, 714 (Tenn. Ct. App. 2019) (citing *Federal Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011)). MNAA acknowledges the Easement Agreement is a valid and enforceable contract and Colonial adequately pleaded its damages. (ECF No. 19, Memorandum, p. 4.)[1] MNAA's only argument here is Colonial has not adequately alleged a deficiency in MNAA's performance amounting to a breach. (*Id.*) That argument is without merit.

---

[1] MNAA likewise alleges the Easement Agreement constitutes an enforceable contract and asserts a claim for breach of the agreement in its related action regarding relocation of Colonial's pipelines. (Case No. 3:20-cv-00809, Complaint, ECF No. 1-1).

2

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* As discussed below, and further detailed in the Amended Complaint, the Amended Complaint states a claim for relief that is plausible on its face.

1. *MNAA Breached Colonial's Rights to Operate and Maintain Its Pipeline.*

In the Easement Agreement, MNAA agreed Colonial has the right to "construct, operate, maintain, repair, replace and inspect its liquid petroleum products pipeline" within the easement. (ECF No. 26, Amended Complaint ¶ 9.) As alleged in the Amended Complaint, MNAA breached this provision by causing Colonial's pipeline to be punctured, requiring Colonial to undertake costly repairs and response actions, interfering with Colonial's operation of the pipeline, and impairing Colonial's rights and benefits under the Easement Agreement.

The soil boring that punctured Colonial's pipeline was being performed by TDOT in connection with its planning for the potential relocation, reconfiguration, and widening of the Interstate 40 interchange with Donelson Pike near BNA, and possibly other projects, in connection with MNAA's potential airport expansion projects. (ECF No. 26, Amended Complaint ¶ 35.) MNAA gave TDOT permission to conduct the soil borings, and MNAA, directly and/or through its retained engineer, AECOM Technical Services, Inc. ("AECOM"), was involved in the soil borings, including by providing guidance or information to TDOT indicating it was safe to drill in the location of the line strike. (ECF No. 26, Amended Complaint ¶¶ 36 & 38.) MNAA provided TDOT, TDOT's engineering firm, and/or AECOM incorrect information

3

regarding the location of the easement and pipeline which, along with AECOM's failure to confirm its accuracy, resulted in the line being struck. (ECF No. 26, Amended Complaint ¶ 39.)

As a result of the strike, over 14,000 gallons of gasoline were released into surrounding soils, and Colonial was forced to shut down operation of Line 19 for some two days during the incident response. (ECF No. 26, Amended Complaint ¶¶ 44 & 45.) The response has included air quality monitoring, construction of berms and trenches to attempt to control the spread of gasoline in the surrounding soils, deployment of sorbent booms to attempt to control the spread of gasoline in nearby McCrory Creek, deployment of an encapsulating agent for fire suppression during the response and repairs to the pipeline, removal of some contaminated soils, and installing several recovery wells to begin recovering contaminated groundwater. (*Id.*) Some of these activities are still ongoing. (*Id.*)

The strike has caused and continues to cause substantial and continuing adverse impacts to Colonial, including costs and damages from the strike and other impacts in connection with the contamination. (ECF No. 26, Amended Complaint ¶¶ 46, 47 & 54.) The ultimate duration and total amount of these impacts are ongoing and undetermined as of yet. (ECF No. 26, Amended Complaint ¶ 48.)

### 2. *MNAA Breached Colonial's Rights to Replace Its Pipeline.*

Leading up to the line strike, Colonial had been involved in discussions with MNAA, and in discussions with TDOT, about possibly relocating Colonial's pipelines to accommodate MNAA's and TDOT's potential projects, and discussions have continued after the line strike. (ECF No. 26, Amended Complaint ¶ 55.) At least one of the options Colonial has been considering involves abandoning portions of its pipelines in place and replacing those portions in different locations outside of the easement. The line strike has complicated these efforts. (ECF No. 26, Amended Complaint ¶ 55.)

4

Thus, in addition to impacting Colonial's operation of its pipeline, the line strike has impacted Colonial's potential plans to relocate and replace portions of its pipelines, including as to potential timing, location, and cost of those efforts. (ECF No. 26, Amended Complaint ¶ 56.) This constitutes a breach by MNAA of the provision of the Easement Agreement cited above.

### 3. MNAA Breached Its Duties to Prevent Use of the Easement that Would Adversely Affect Airport Operations or Constitute an Airport Hazard.

Under the Easement Agreement, MNAA also agreed to "prevent the use of the easement and real property which would interfere with or adversely affect the operation or maintenance of [BNA] or otherwise constitute an airport hazard." (ECF No. 26, Amended Complaint ¶ 10.) As set forth in the Amended Complaint and summarized above, MNAA breached that provision because the strike and resulting release of gasoline created a hazard to persons, property, the environment, Colonial's operations and airport operations. (ECF No. 26, Amended Complaint ¶¶ 46, 47 & 56.)[2]

These acts and omissions, all of which are pleaded in greater detail in Colonial's Amended Complaint and incorporated in its claim for breach of contract, were deficiencies in performance by MNAA and in breach of the express terms of the Easement Agreement. Accepting these factual allegations as true, Colonial has adequately alleged deficiencies in MNAA's performance and stated a claim for breach of contract.

---

[2] MNAA argues this provision is for the benefit of MNAA and is not a duty owed to Colonial. That interpretation is not supported by the wording of the provision, and is not an appropriate determination to be made at this stage in the proceedings. In any event, Colonial has adequately alleged MNAA's acts and omissions that breached the provision, resulting in damages to Colonial and impairing Colonial's reasonable expectations under, and rights to receive the benefits of, the Easement Agreement. (See the discussion below regarding the covenant of good faith and fair dealing.)

C. <u>Colonial's Amended Complaint States a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing in the Easement Agreement</u>.

Under Tennessee law, easement agreements are contracts. *Columbia Gulf Trans. Co. v. Keller*, No. 3:08-CV-0195, 2009 WL 10728591, at *5 (M.D. Tenn. Feb. 27, 2009) ("Easements conveyed by a written instrument are effectively contracts, the written terms of which define the nature and extent of the easement."); *Hixson*, 593 S.W. 3d at 711 ("An easement agreement is a contract."). Implied in every contract subject to Tennessee law is "a duty of good faith and fair dealing in its performance and enforcement." *Wallace v. Nat'l Bank of Commerce*, 938 S.W. 2d 684, 686 (Tenn. 1996) (quoting Restatement (2d) Contracts, § 205 (1979)).

The purpose of this implied duty is to (1) "honor the contracting parties' reasonable expectations;" and (2) "protect[] the rights of the parties to receive the benefits of the agreement they entered into." *Barnes & Robinson Co., Inc. v. OneSource Facility Services, Inc.*, 195 S.W.3d 637, 642–43 (Tenn. Ct. App. 2006); *see also, Dick Broadcasting Co., Inc. v. Oak Ridge FM, Inc.*, 395 S.W. 3d 653, 666 (Tenn. 2013) (stating that the covenant "protects the parties' reasonable expectations as well as their right to receive the benefits of their agreement"). The covenant "imposes a duty on the contracting parties to do nothing that will impair or destroy the rights of the other party to receive the benefits of the contract." *Long v. McAllister-Long*, 221 S.W.3d 1, 9 (Tenn. Ct. App. 2006); *see also, Dick Broadcasting Co.,* 395 S.W. 3d at 662 ("[T]here is an implied covenant of good faith and fair dealing in every contract, whereby neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.").

As stated in the Amended Complaint, Colonial had a reasonable expectation under the Easement Agreement that MNAA would not take or allow any action that would adversely affect Colonial's enjoyment and use of its pipelines or its rights or benefits under the Easement

6

Agreement. (ECF No. 26, Amended Complaint ¶ 63.) As further detailed in the Amended Complaint and summarized above, MNAA failed to honor these reasonable expectations by causing Colonial's pipeline to be punctured, resulting in the disruptions of the pipeline operation, a discharge of over 14,000 gallons of gasoline, and lengthy and expensive removal efforts, which are ongoing today. (*See generally,* ECF No. 26, Amended Complaint.)

MNAA's acts and omissions impaired and injured Colonial's reasonable expectations under, and rights to receive the benefits of, the Easement Agreement—namely, the right to operate its pipeline within the easement without disruption or damage. Colonial has adequately stated a claim for breach of the covenant of good faith and fair dealing implied in the Easement Agreement.

        D.      <u>Colonial's Claim for Breach of the Easement Agreement Sounds in Contract</u>.

MNAA cites two cases for the proposition that "[u]nreasonable interference with easement is not a breach of contract claim," but neither supports that proposition. *Cox v. East Tenn. Natural Gas Co.*, 136 S.W.3d 626 (Tenn. Ct. App. 2003); *Shell v. Williams*, No. M2013-00711-COA-R3CV, 2014 WL 118376 (Tenn. Ct. App. Jan. 14, 2014).

*Cox* was a declaratory judgment action by the grantor of an easement, seeking a declaration that he should be allowed to place fill dirt over the easement holder's natural gas pipeline. *Cox*, 136 S.W.3d 626, 626. Overturning the trial court, the court of appeals held "plaintiff's proposal to fill dirt over the easement up to 23 feet would constitute an unreasonable interference with defendant's rights as holder of the easement." *Id.* at 828. The opinion recites provisions of a "Right of Way Agreement" between the parties and says nothing establishing the tort nature of an action for unreasonable interference with easement. *Id.* at 627.

7

*Shell* involved the determination of "the proper use and alleged interference with an easement created by express grant." *Shell*, 2014 WL 118376, at *1. The court in *Shell* did not address whether an action for interference with easement sounds in contract or tort, but relied heavily on the language of the original deeds in determining the parties' competing claims for declaratory judgment regarding their respective rights under the easement:

> In the construction of instruments creating easements, it is the duty of the court to ascertain and give effect to the intention of the parties. *Burchfiel v. Gatlinburg Airport Authority*, No. E2005–02023–COA–R3–CV, 2006 WL 3421282, at *3 (Tenn. Ct. App. 2006). The intention of the parties with regard to the purpose and scope of an easement conveyed by express grant is determined by the language of the deed. *See Foshee v. Brigman*, 129 S.W.2d 207, 208 (Tenn. 1939).

*Id.* at *4 (internal quotation marks and citations omitted).

Contrary to MNAA's unsupported assertion that "[u]nreasonable interference with easement is an entirely different creature from breach of contract," (Memorandum, p. 6), as mentioned above, this Court has determined that "[e]asements conveyed by a written instrument are effectively contracts." *Columbia Gulf Trans. Co.*, 2009 WL 10728591, at *5. Accordingly, as with any other contract, easements can be breached and give rise to a breach of contract claim:

> In sum, the Court finds based on the undisputed facts that Columbia has established the requisite elements of a breach-of-contract action related to the Gallatin Pipeline Right-of-Way Agreement: (1) the Gallatin Pipeline Right-of-Way Agreement is a valid and enforceable contract between the parties; (2) the defendants materially breached the Agreement by paving their driveway, which crosses the Gallatin Pipeline and the Gallatin Pipeline Right of Way; and (3) Columbia suffered material damages as a result of the breach.

*Id.* at *6.

The Easement Agreement between Colonial and MNAA is a valid and enforceable contract, as MNAA has admitted. As a contract, it can be breached—with respect to its express

8

and implied terms —which Colonial has adequately pleaded in its Amended Complaint. Contrary to MNAA's motion, Colonial's breach of contract claim does not sound in tort, and MNAA's arguments for dismissal fail.[3]

## CONCLUSION

Colonial's rights and reasonable expectations under the Easement Agreement included that MNAA would not take or allow any actions that would interfere with, disrupt, or otherwise impair or injure Colonial's right to operate, maintain and replace its pipeline or otherwise receive the benefits of the agreement. As alleged in Colonial's Amended Complaint, MNAA breached the Easement Agreement by impairing and injuring Colonial's rights and reasonable expectations in this regard. Because MNAA's motion is moot, and because Colonial's Amended Complaint states a claim for breach of contract upon which relief can be granted against MNAA, MNAA's partial motion to dismiss should be denied.

Respectfully submitted,

s/ *Brian M. Dobbs*
L. Wearen Hughes (BPR No. 5683)
J. Andrew Goddard (BPR No. 6299)
Brian M. Dobbs (BPR No. 25855)
Bass, Berry & Sims PLC
150 3rd Ave. S., Suite 2800
Nashville, TN 37201
(615) 742-6200
whughes@bassberry.com
dgoddard@bassberry.com
bdobbs@bassberry.com

*Attorneys for Plaintiff and Counter-Defendant Colonial Pipeline Company*

---

[3] In a footnote, MNAA cites several cases from other jurisdictions for the proposition that "[u]nreasonable interference [with easement] is a tort." (ECF No. 19, Memorandum, n. 1.) All of those cases are contrary to the Tennessee cases cited above (including those with respect to the duty of good faith and fair dealing implied in a contract), and none is binding on this Court.

**CERTIFICATE OF SERVICE**

I certify that I filed this document electronically using the Court's electronic case management system, which will send notice to:

Paul S. Davidson
Edward Callaway
Michael C. Brett
Waller Lansden Dortch & Davis LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
paul.davidson@wallerlaw.com
ed.callaway@wallerlaw.com
mike.brett@wallerlaw.com

*Attorneys for Defendant and Counter-Claimant
Metropolitan Nashville Airport Authority*

Gary C. Shockley
Caldwell G. Collins
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
211 Commerce Street
Nashville, TN 37201
gshockley@bakerdonelson.com
cacollins@bakerdonelson.com

*Attorneys for Defendant AECOM Technical Services, Inc.*

                                           s/ *Brian M. Dobbs*
                                           Brian M. Dobbs