UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| COLONIAL PIPELINE COMPANY ) | |
| ) | |
| *Plaintiff* ) | |
| ) | Case No. 3:20-cv-00666 |
| v. ) | |
| ) | Judge William L. Campbell, Jr. |
| METROPOLITAN NASHVILLE ) | Magistrate Judge Alistair E. Newbern |
| AIRPORT AUTHORITY; and ) | JURY DEMAND |
| AECOM TECHNICAL SERVICES, INC. ) | |
| ) | |
| *Defendants* ) | |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO CONSOLIDATE

Colonial Pipeline Company's ("Colonial") motion to consolidate should be granted because (1) the cases share common issues of law and fact, (2) keeping the cases separate presents a risk of inconsistent adjudications on the common issues, (3) preparing and trying two lawsuits regarding related and overlapping issues will increase the burden on the parties, witnesses and available judicial resources, and (4) these considerations outweigh the risk of any potential confusion or prejudice to the parties.

Colonial filed this suit against the Metropolitan Nashville Airport Authority ("MNAA") and AECOM Technical Services, Inc. ("AECOM") on July 31, 2020, primarily seeking recovery of costs and damages from an April 2019 strike of Colonial's gasoline pipeline at the Nashville International Airport ("BNA") causing, among other things, gasoline contamination (the "Line Strike Case" or "Case No. 666"). On September 4, 2020, MNAA filed a state court suit against Colonial regarding a potential relocation of Colonial's gasoline pipelines, including the struck pipeline involved in the Line Strike Case, which Colonial removed to this Court (*Metropolitan Nashville Airport Authority v. Colonial Pipeline Company*, Case No. 3:20-cv-00809) (the

"Relocation Case" or "Case No. 809")). Both cases include claims of breach of the same Easement Agreement, and involve similar issues regarding the effects of the alleged breaches, responsibility for the line strike and resulting impacts (including costs and damages), and the effects of the line strike contamination on possible pipeline relocation and replacement; and they should be consolidated.

ARGUMENT

Federal Rule of Civil Procedure 42 authorizes the consolidation of cases that "involve a common question of law or fact." Fed. R. Civ. P. 42(a). District courts enjoy considerable discretion in deciding whether to consolidate cases. *Cantrell v. GAF Corp.,* 999 F.2d 1007, 1011 (6th Cir. 1993). In exercising that discretion, a court should consider "whether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Id.* (alterations omitted). "The underlying objective [of consolidation] is to administer the court's business 'with expedition and economy while providing justice to the parties.'" *Advey v. Celotex Corp.*, 962 F.2d 1177, 1180 (6th Cir. 1992) (quoting 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2381 (1971)).

  A. <u>Consolidation is Appropriate Because the Cases Involve Common Questions of Law and Fact</u>.

"[C]onsolidation does not require every question of law and fact to be the exact same." *Cunningham Prop. Mgmt. Tr. v. Ascent Res.-Utica, LLC*, No. 2:16-CV-957, 2020 WL 4217962, at *3 (S.D. Ohio July 23, 2020) (consolidating cases that each required the interpretation of substantially similar oil and gas leases). Nevertheless, the facts involved in both cases here are

2

closely connected.

The soil boring that punctured Colonial's pipeline was being performed by the Tennessee Department of Transportation in connection with its planning for the potential relocation, reconfiguration, and widening of the Interstate 40 interchange with Donelson Pike near BNA, and possibly other projects, in connection with MNAA's potential airport expansion projects. (Case No. 666, ECF No. 26, Amended Complaint ¶ 35; Case No. 809, ECF No. 1-1, Complaint ¶¶ 9–11.) MNAA gave TDOT permission to conduct the soil borings, and MNAA, directly and/or through its retained engineer, AECOM, was involved in the soil borings, including by providing guidance or information to TDOT indicating it was safe to drill in the location of the line strike. (Case No. 666, ECF No. 26, Amended Complaint ¶¶ 36 & 38.) MNAA provided TDOT, TDOT's engineering firm, and/or AECOM incorrect information regarding the location of the easement and pipeline which, along with AECOM's failure to confirm its accuracy, resulted in the line being struck. (Case No. 666, ECF No. 26, Amended Complaint ¶ 39.)

As a result of the line strike, over 14,000 gallons of gasoline were released into surrounding soils, and Colonial was forced to shut down operation of its Line 19 for some two days during the incident response. (Case No. 666, ECF No. 26, Amended Complaint ¶¶ 44 & 45.) The response has included air quality monitoring, construction of berms and trenches to attempt to control the spread of gasoline in the surrounding soils, deployment of sorbent booms to attempt to control the spread of gasoline in nearby McCrory Creek, deployment of an encapsulating agent for fire suppression during the response and repairs to the pipeline, removal of some contaminated soils, and installing several recovery wells to begin recovering contaminated groundwater. (*Id.*) Some of these activities are still ongoing. (*Id.*)

Leading up to the line strike, Colonial had been involved in discussions with MNAA, and in discussions with TDOT, about possibly relocating Colonial's pipelines to accommodate MNAA's and TDOT's potential projects, and discussions have continued after the line strike. (Case No. 666, ECF No. 26, Amended Complaint ¶ 55; Case No. 809, ECF No. 1-1, Complaint ¶¶ 11–26.) At least one of the options Colonial has been considering involves abandoning portions of its pipelines in place and replacing those portions in different locations outside of the easement. The line strike has complicated these efforts. (Case No. 666, ECF No. 26, Amended Complaint ¶ 55.)

The strike has caused and continues to cause substantial and continuing adverse impacts to Colonial, including costs and damages from the strike and other impacts in connection with the contamination, as well impacts to Colonial's potential plans to relocate and replace portions of its pipelines to accommodate the MNAA and TDOT projects, including as to potential timing, location, and cost of those efforts. (Case No. 666, ECF No. 26, Amended Complaint ¶¶ 46, 47, 54 & 56.)

As implicated by the pleadings in both cases, the interrelation of the MNAA and TDOT potential projects, the potential pipeline relocation and replacement, the line strike and resulting contamination present several overlapping questions of law and fact in both cases, including the following:

- Whether MNAA (along with AECOM) is at least partially responsible for the consequences and damages arising from the line strike that occurred on MNAA's property and in connection with its potential projects, including the contamination and its effects on any line relocation and replacement.

- Whether MNAA's responsibility for the line strike, and the resulting effects on

4

Colonial's pipeline operations and potential relocation and replacement plans, constitutes a material breach of the Easement Agreement by MNAA.

- What is the effect of the above breaches on Colonial's obligations and defenses at issue in the Relocation Case and with respect to MNAA's counterclaim in the Line Strike Case, including:
    - Whether MNAA is entitled to any damages or other relief in either case.
    - Whether Colonial is excused, in whole or in part, from obligations under the Easement Agreement to relocate its pipeline.
    - Whether MNAA's claims are barred to the extent the line strike and contamination have made Colonial's performance with regard to line relocation and replacement impracticable or impossible.
    - Whether MNAA's claims are barred to the extent the line strike and contamination have frustrated the purpose of the Easement Agreement.
    - Whether any damages MNAA seeks were caused by other parties for which Colonial is not responsible, including MNAA, AECOM or TDOT.
    - Whether Colonial is entitled to set off its damages from the line strike against any damages or relief sought by MNAA in either case.
- If Colonial is obligated to relocate its pipelines, the effect of the line strike and contamination on the timing, location, and cost of the relocation and replacement, including who should bear the cost.
- The effect of the line strike and contamination on the timing and location of MNAA's potential projects, including the effects of the contamination on TDOT projects related to or affecting MNAA's projects and the effects on other third-party

5

involvement or approvals (e.g., EPA, TDEC, US Coast Guard), which could ultimately impact the timing and cost of the Colonial pipeline relocation and replacement.

The commonality of factual and legal questions involved in the Line Strike Case and Relocation Case makes consolidation of the cases appropriate.

B. <u>Keeping the Cases Separate Presents a Risk of Inconsistent Adjudications on Common Factual and Legal Issues.</u>

Conducting separate trials in the Line Strike Case and Relocation Case, before two different triers of fact at different times, presents a possibility of inconsistent adjudications on key issues of fact and law common to both cases, most notably, which party or parties breached the Easement Agreement, and when.

Under Tennessee law, "[a] party who has materially breached a contract is not entitled to damages stemming from the other party's later material breach of the same contract. Thus, in cases where both parties have not fully performed, *it is necessary for the courts to determine which party is chargeable with the first uncured material breach.*" *United Brake Sys., Inc. v. Am. Envtl. Prot., Inc.*, 963 S.W.2d 749, 756 (Tenn. Ct. App. 1997) (quoting *McClain v. Kimbrough Const. Co.*, 806 S.W.2d 194, 199 (Tenn. Ct. App. 1990)) (emphasis added). Further, it is well-settled under Tennessee law that "[w]hen one party to a contract materially breaches the same, is unable to perform, or manifests an intention to no longer be bound by the contract, the non-breaching party is excused from further performance." *Markow v. Pollock*, No. M2008-01720-COA-R3-CV, 2009 WL 4980264, at *5 (Tenn. Ct. App. Dec. 22, 2009) (citing *Lopez v. Taylor*, 195 S.W. 3d 627, 635 (Tenn. Ct. App. 2005).

Presenting issues related to breach of the Easement Agreement in separate cases carries a clear risk of inconsistent adjudications on a key issue with important implications in both cases.

6

The same can be said of the other common issues identified above, including whether third parties bear any responsibility for the line strike and contamination, and the effects of the contamination on the timing, location, and cost of the pipeline relocation and replacement.

    C.    <u>Preparing and Trying Two Lawsuits Regarding Related Issues Will Increase the Burden on the Parties, Witnesses and Available Judicial Resources</u>.

Because of the commonality of factual and legal issues described above, there will be overlapping discovery and proof with respect all facts relevant to those issues in both cases. This will include discovery and proof regarding the fault and responsibility of the parties, including third parties (e.g., AECOM, TDOT, and TDOT's consultant), for the line strike, as well as the effects of the contamination from the line strike common to both cases, including on the potential MNAA and TDOT projects, and on the potential relocation and replacement of Colonial's pipeline. The discovery and proof relevant to both cases will involve issues concerning responsibility for the line strike and its effects on the line relocation and replacement, including the following:

- How MNAA's GIS mapping data for Line 19 was developed, including what MNAA and AECOM knew with respect to the location of Line 19.

- The implications of information regarding a previous line strike Colonial discovered in 2012 and whether MNAA revised its mapping data in response to this information.

- Any information MNAA had or was provided with respect to the location of Line 19.

- GIS mapping and other utility information provided by MNAA or AECOM to TDOT or TDOT's consultants.

- Prior relocations of portions of Colonial's pipelines in and around MNAA property, including whether and how those relocations were documented and the effect of those relocations on MNAA's knowledge about pipeline location and what portions of the

7

- pipelines are subject to the Easement Agreement.
- Whether the entirety of Colonial's pipelines that cross MNAA property are within the easement, and thus whether all portions of the pipelines that cross MNAA property are subject to the Easement Agreement.
- The parties' prior dealings with respect to the easement, Easement Agreement, and Colonial's pipelines.

Conducting discovery and developing and putting on proof on the overlapping issues on two separate tracks would be unduly burdensome and expensive for the parties, third parties, document custodians and witnesses involved, and would further strain available judicial resources in resolving any discovery disputes and dealing with overlapping proof at trial. Consolidation would allow the parties to engage in discovery and development of this proof in an efficient and coordinated manner, without the need for multiple and duplicative rounds of depositions, multiple sets of Bates numbered documents and exhibits, or presenting the same evidence twice, and would allow this Court to preside over all related motions, disputes, claims and arguments among the parties.

D. <u>The Foregoing Considerations Outweigh the Risk of any Potential Confusion or Prejudice to the Parties, Including AECOM</u>.

With the exception of AECOM's role as a named defendant in the Line Strike Case, the parties in both cases are identical, the Easement Agreement between Colonial and MNAA is the same, and, as set forth above, many of the issues that will need to be addressed in both cases are the same. Both cases are still in the early stages of litigation, discovery has not commenced, and no trial dates have been set. Further, as this Court has stated, "[c]onsolidation … does not merge the suits into a single cause, or change the rights of parties, or make those who are parties in one suit parties in another." *U.S. ex rel. & for Use of Tennessee Valley Auth. v. An Easement & Right-*

8

Case 3:20-cv-00666   Document 30-1   Filed 10/28/20   Page 8 of 11 PageID #: 240

*of-Way Over 1.8 Acres of Land, More or Less, in Maury Cty., Tenn.*, 682 F. Supp. 353, 355 (M.D. Tenn. 1988). Thus, it would not cause any delay or prejudice to the parties to consolidate the Line Strike Case and Relocation Case, including as to AECOM.

Moreover, AECOM, while not a named party, is involved in the Relocation Case. AECOM has been advising MNAA on its potential projects throughout the events giving rise to both cases, including the possible relocation and replacement of Colonial's pipeline. (*See, e.g.*, Case No. 809, ECF No. 1-1, Complaint Ex. 4, pp. 38–39 (email from AECOM Project Manager on behalf of MNAA summarizing a conference call concerning the relocation)). AECOM's role in the line strike could make it responsible, among other things, for any increased relocation and replacement costs resulting from the line strike. At the least, AECOM will be a crucial witness in the Relocation Case, as well as the Line Strike Case. *See, e.g.*, *UPMC Presbyterian Shadyside v. Fleet Owners Ins. Fund*, No. 1:19CV158, 2019 WL 2513848, at *2 (N.D. Ohio June 18, 2019) (stating even though one party was only a party to one of the cases, consolidation was appropriate because that party had "a significant role" in the other lawsuit "and the scope of discovery in each action will overlap significantly").

Colonial recognizes that because MNAA made a jury demand in the Line Strike Case, a consolidated trial would involve some determinations made by a jury and some made by the Court, which is not unusual in a jury trial dealing with a contract. *See. e.g., Morsey Constructors LLC v. JMN Rebar LLC*, 448 F. Supp. 3d 812, 816, (M.D. Tenn. 2020) (citing *Ray Bell Constr. Co. v. State*, 356 S.W.3d 384, 386 (Tenn. 2011) (finding contract interpretation to be a question of law in Tennessee). Importantly though, the determination of issues that would be made by the Court involve several overlapping issues from the Line Strike Case and the Relocation Case, justifying consolidation. The Court and the parties will need to be thoughtful about structuring

9

the trial, including with respect to special interrogatories and instructions to the jury, but any possible confusion is outweighed by the risk of inconsistent adjudication of overlapping factual issues should the cases be tried separately.

## CONCLUSION

Consolidation will eliminate the risk of inconsistent adjudications of common factual and legal issues, decrease the burden and expense on parties, witnesses, and the court, promote judicial economy, and not cause any prejudice or delay. Colonial respectfully requests these cases be consolidated.

Respectfully submitted,

s/ *Brian M. Dobbs*
L. Wearen Hughes (BPR No. 5683)
J. Andrew Goddard (BPR No. 6299)
Brian M. Dobbs (BPR No. 25855)
Bass, Berry & Sims PLC
150 3rd Ave. S., Suite 2800
Nashville, TN 37201
(615) 742-6200
whughes@bassberry.com
dgoddard@bassberry.com
bdobbs@bassberry.com

*Attorneys for Plaintiff and Counter-Defendant Colonial Pipeline Company*

10

**CERTIFICATE OF SERVICE**

I certify that I filed this document electronically using the Court's electronic case management system, which will send notice to:

Paul S. Davidson
Edward Callaway
Michael C. Brett
Waller Lansden Dortch & Davis LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
paul.davidson@wallerlaw.com
ed.callaway@wallerlaw.com
mike.brett@wallerlaw.com

*Attorneys for Defendant and Counter-Claimant*
*Metropolitan Nashville Airport Authority*

Gary C. Shockley
Caldwell G. Collins
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
211 Commerce Street
Nashville, TN 37201
gshockley@bakerdonelson.com
cacollins@bakerdonelson.com

*Attorneys for Defendant AECOM Technical Services, Inc.*

                                    s/ *Brian M. Dobbs*
                                    Brian M. Dobbs