IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| COLONIAL PIPELINE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:20-CV-00666 |
| | ) |
| METROPOLITAN NASHVILLE | ) Judge William L. Campbell, Jr. |
| AIRPORT AUTHORITY and AECOM | ) Magistrate Judge Alistair E. Newbern |
| TECHNICAL SERVICES, INC., | ) JURY TRIAL DEMANDED |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF
METROPOLITAN NASHVILLE AIRPORT AUTHORITY'S
PARTIAL MOTION TO DISMISS AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

BACKGROUND .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

      A.      Standard of Review ............................................................................................ 2

      B.      The Complaint Fails to State a Claim for Breach of Contract ........................... 3

            i.      The Airport's Alleged Actions Do Not Constitute A Deficiency in Performance Amounting to a Breach ................................. 3

            ii.     The Implied Duty of Good Faith and Fair Dealing Does Not Give Rise To A Stand-Alone Claim for Breach of Contract ........................................................................................................... 8

CONCLUSION ..................................................................................................................... 9

CERTIFICATE OF SERVICE ............................................................................................ 10

# **TABLE OF AUTHORITIES**
**Table of Authorities**

**Supreme Court Opinions**                                                                                              Page(s)

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 2

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 3

*Fry v. Napoleon Cmty. Sch.*,
  137 S. Ct. 743, 197 L. Ed. 2d 46 (2017) ............................................................. 7

**Federal Court Opinions**

*Brenay v. Schartow*,
  709 Fed. Appx. 331 (6th Cir. 2017) ..................................................................... 7

*Courie v. Alcoa Wheel & Forged Prods.*,
  577 F.3d 625 (6th Cir. 2009) ................................................................................ 2

*Directv, Inc. v. Treesh*,
  487 F.3d 471 (6th Cir. 2007) ................................................................................ 3

*P.G. v. Rutherford Cty. Bd. of Educ.*,
  313 F. Supp. 3d 891 (M.D. Tenn. 2018) .............................................................. 7

**State Cases**

*American Metal Co. v. Fluid Chemical Co.*,
  296 A.2d 348 (N.J. Super. Ct. Law Div. 1972) ................................................... 6

*Cadence Bank, N.A. v. Alpha Trust*,
  473 S.W.3d 756 (Tenn. Ct. App. 2015) ............................................................... 8

*Cox v. E. Tenn. Natural Gas Co.*,
  136 S.W.3d 626 (Tenn. Ct. App. 2003) ............................................................ 5-6

*Dick Broad. Co. v. Oak Ridge FM, Inc.*,
  395 S.W.3d 653 (Tenn. 2013) .............................................................................. 8

*Hixson v. Am. Towers LLC*,
  593 S.W.3d 699 (Tenn. Ct. App. 2019) ........................................................... 3, 5

*Lamar Adver. Co. v. By-Pass Partners*,
   313 S.W.3d 779 (Tenn. Ct. App. 2009) ............................................................................... 8, 9

*Sams v. Young*,
   124 S.E.2d 386 (Ga. 1962) ..................................................................................................... 6

*Shell v. Williams,* No. M2013-00711-COA-R3-CV,
   2014 Tenn. App. LEXIS 12 (Tenn. Ct. App. Jan. 14, 2014) ................................................... 6

*TSC Industries, Inc. v. Tomlin*,
   743 S.W.2d 169 (Tenn. App. 1987) ........................................................................................ 8

*Ute Water Conservancy Dist. v. Fontanari*, No. 15CV30590,
   2016 Colo. Dist. LEXIS 8 (Colo. Dist. Feb. 23, 2016)…………………………………………6

*Winselmann v. Reynolds*,
   690 So.2d 1325 (Fla. App. 1997) ............................................................................................ 6

**State Statutes**

Tenn. Code. Ann. § 29-20-101 et seq. ............................................................................................. 1

**Rules**

Federal Rule of Civil Procedure 12 ................................................................................................. 2

**Restatement of the Law**

*Restat. 3d of Prop.*
   § 4.13 ...................................................................................................................................... 5

Defendant Metropolitan Nashville Airport Authority ("the Airport") is a public and governmental body with defenses, immunities and limitations of liabilities as set forth in the Governmental Tort Liability Act ("GTLA") codified at Tenn. Code. Ann. § 29-20-101 *et seq*. Count I of the Amended Complaint--breach of contract--is a fruitless attempt by Colonial to (1) avoid those defenses, immunities and limitations of liability and (2) provide a defense to the Airport's separately filed action to specifically enforce Colonial's obligation to relocate its pipeline to make way for the Airport's expansion.[1] Because Count I fails to state a claim upon which relief may be granted, the Airport respectfully requests the Court grant its partial motion to dismiss.

## BACKGROUND

The Amended Complaint alleges that in 1976, the Airport entered into a Dedication of Easement and Agreement with Colonial (the "Easement Agreement"), by which the Airport granted Colonial a permanent easement across the Airport's property at Nashville International Airport ("BNA"). Am. Compl. ¶ 8. The two express provisions of the Easement Agreement Colonial relies upon to support its breach of contract claim are: (a) an introductory section on page 3 and (b) Section 9 on page 8. In the introductory section, the Easement Agreement grants Colonial the right to "construct, operate, maintain, repair, replace and inspect its liquid petroleum products pipeline." Am. Compl. ¶ 9. Under Section 9, the Airport agreed "for itself, its successors and assigns, to prevent the use of the easement and real property which would interfere with or adversely affect the operation of maintenance of [BNA] or otherwise constitute an airport hazard." Am. Compl. ¶ 10.

The Amended Complaint asserts only four factual allegations regarding affirmative acts

---

[1] *Metropolitan Nashville Airport Authority v. Colonial Pipeline Company*, M.D. Tenn. No. 3:20-cv-00809.

by the Airport: first, that "[the Airport] gave TDOT permission to conduct the soil test borings," Am. Compl. ¶ 36; second, that "[the Airport] provided TDOT, TDOT's engineering firm, and/or AECOM incorrect information regarding the location of the easement and pipeline," Am. Compl. ¶ 39; third, that "[the Airport] knew or should have known [TDOT and AECOM] were in the near vicinity of Line 19 and should have initiated another One-Call ticket and contacted Colonial before proceeding," Am. Compl. ¶ 40; and fourth, that "[the Airport] and AECOM were using information they knew or should have known was not accurate with respect to the location of Line 19." Compl. ¶¶ 36-37.

## ARGUMENT

Count I of the Complaint--breach of contract by the Airport--fails to state a claim upon which relief may be granted. The Amended Complaint does not identify any facts that support Colonial's bare legal conclusion that the Airport breached a duty it owed to Colonial under the Easement Agreement. Rather, the appropriate cause of action for the facts pled by Colonial is unreasonable interference with easement, a tort claim.

### A.  Standard of Review

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, this Court should dismiss a complaint that fails to state a claim upon which relief may be granted. A complaint is legally insufficient if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a complaint "only survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 663). Although the Court must take a complaint's factual allegations as true in assessing whether such allegations meet the standard of plausibility, the Court need not

accept the truth of legal conclusions or draw "unwarranted factual inferences." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (quoting *Gregory v. Shelby Cnty., Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**B.     The Complaint Fails to State a Claim for Breach of Contract**

In order to prevail on a breach of contract claim, a plaintiff must prove "the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *Hixson v. Am. Towers LLC*, 593 S.W.3d 699, 714 (Tenn. Ct. App. 2019) (citing *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011)).

The Airport acknowledges the existence of a valid and enforceable contract and that the Amended Complaint alleges Colonial has incurred costs and damages as a result of the strike of Line 19. Compl. ¶ 46. The issue is whether the Amended Complaint sets forth a claim that the Airport's actions constitute a deficiency in performance amounting to a breach of the Easement Agreement. It does not.

**i.     The Airport's Alleged Actions Do Not Constitute A Deficiency in Performance Amounting to a Breach**

To assess whether the Airport's alleged deficiency in performance amounts to a breach, the Court must first evaluate the Airport's duty to perform according to the terms of the parties' agreement. The four factual allegations regarding affirmative acts by the Airport do not support Colonial's contention there was a deficiency in the Airport's performance of its duties under the Easement Agreement. Rather, even accepting the alleged acts as true for purposes of this motion to dismiss, Colonial has not stated a claim for breach of contract, but has instead stated a claim for interference with easement--a tort.

Section 9 of the Easement Agreement provides: "***The Metropolitan Nashville Airport Authority expressly agrees for itself, its successors and assigns***, to prevent the use of the easement and real property which would interfere with or adversely affect the operation or maintenance of [BNA] or otherwise constitute an airport hazard." (emphasis added). This covenant is for the benefit of the Airport, its successors, and assigns; it is not a duty owed by the Airport to Colonial. Colonial cannot state a claim for breach of this provision: by its plain language, the Airport owes no obligation to Colonial under Section 9.

The second express contractual provision Colonial relies upon, the introductory section on page 3 of the Easement Agreement, provides: "This conveyance includes the right of Colonial Pipeline Company, its servants and agents to construct, operate, maintain, repair, replace and inspect its liquid petroleum products pipeline within the limits of the aforedescribed easement or right-of-way." Colonial continues to enjoy those rights under the Easement Agreement--it operates, maintains, repairs, replaces and inspects the pipeline on the Airport property to the present day. Although Colonial asserts the Airport's acts or omissions caused "a shutdown and disruptions to, and otherwise adversely affect[ed], Colonial's operation and maintenance of its pipeline," Am. Compl. ¶ 64, nothing in the Easement Agreement imposes a duty on the Airport to prevent shutdown or disruptions to Colonial's operation and maintenance of the pipeline.

The Easement Agreement does not require the Airport abstain from allowing third parties (in this case TDOT) to conduct soil test borings, does not impose a duty upon the Airport to call Colonial before a third party conducts soil test borings, and does not mandate the Airport maintain any information--accurate or not--regarding location of Colonial's pipeline. The Amended Complaint does not allege the Airport has any contractual duty to maintain the servient estate for the benefit of Colonial.

By the express language of the Easement Agreement, the Airport has no contractual duty to maintain Colonial's easement, and no contractual duty to warn Colonial of hazards or otherwise prevent damage or avoid disruptions to Colonial's operations caused by the negligence of third parties. Operation, maintenance, repair, replacement, and inspection are the rights and responsibilities of Colonial, not the Airport. *See, e.g., Hixson,* 593 S.W.3d at 710 (landowner failed to warn easement holder of condition of hill and failed to promote growth of vegetation on hill, thereby contributing to mudslide which caused damage to easement holder's cellular tower; nevertheless, landowner was not liable for breach of contract because easement agreement did not impose maintenance duties on landowner). *See also* Restat. 3d of Prop. § 4.13 ("the holder of the servient estate has no duty to the beneficiary of an easement or profit to repair or maintain the servient estate or the improvements used in the enjoyment of the easement or profit"); 25 Am. Jur. 2d Easement and Licenses § 72 ("the owner of an easement must keep it in repair. The owner of the servient tenement ordinarily is under no duty to maintain or repair it, in the absence of an agreement imposing such a duty").

As Colonial did not and could not allege the Airport breached any express provision of the Easement Agreement, Count I of the Amended Complaint only states the legal conclusion that the Airport's "acts and omissions were in breach of and interfered with Colonial's reasonable expectations and rights under the Easement Agreement, and were contrary to the express and implied terms of the Easement Agreement." Am. Compl. ¶ 62. This claim could have been, but was not, asserted as a cause of action for unreasonable interference with easement. *See, e.g., Cox v. E. Tenn. Natural Gas Co.*, 136 S.W.3d 626, 628 (Tenn. Ct. App. 2003) (a servient estate owner "cannot take actions that unreasonably interfere with [the easement holder's] rights under the easement, including any alterations in [the easement

holder's] property"); *Shell v. Williams*, No. M2013-00711-COA-R3-CV, 2014 Tenn. App. LEXIS 12, at *9 (Tenn. Ct. App. Jan. 14, 2014) (to prevail in an action for unreasonable interference with easement, the owner of the easement must prove (1) the existence of the easement; (2) unreasonable interference with a legitimate use or purpose of the easement; and (3) actual damage to the easement holder's use). Such a cause of action sounds in tort law, not contract law. *See Ute Water Conservancy Dist. v. Fontanari*, No. 15CV30590, 2016 Colo. Dist. LEXIS 8 (Colo. Dist. Feb. 23, 2016) (granting public water utility's motion to dismiss claim based on alleged breach of easement agreement for water pipeline, and finding while the claim "appears on the surface to be rooted in contract, the substance of the claim actually lies in tort" and must be dismissed under the Governmental Immunity Act "because it could lie in tort despite the fact that it has been pled as a breach of contract claim").[2]

Colonial likely recognizes interference with easement is the proper claim. Indeed, it stated such a claim against private contractor AECOM in Count IV of the Amended Complaint, but not against the Airport. The reason Colonial has deliberately *not* pled interference with easement against the Airport is a matter of legal gamesmanship: (1) Colonial wishes to avoid the defenses and limitations on damages in tort actions brought against governmental entities provided by the GTLA, *see, e.g.*, Tenn. Code Ann. § 29-20-403(b)(4) (providing a cap on damages for tort claims arising from injury to or destruction of property); and (2) Colonial hopes to create a first material breach doctrine defense in the separate action pending before this Court,

---

[2] *See also American Metal Co. v. Fluid Chemical Co.,* 296 A.2d 348, 349-51 (N.J. Super. Ct. Law Div. 1972) ("Once the easement has been granted, any interference with it is a violation of the vested property rights of the easement's owner as those rights are defined in the contract, and such interference constitutes a tort"); *Winselmann v. Reynolds*, 690 So.2d 1325 (Fla. App. 1997) (finding in dispute over erection of fence on right of way easement that "[t]he proper remedy at law for injury to or disturbance of an easement is an action on the case," a tort claim from old English law); *Sams v. Young*, 124 S.E.2d 386 (Ga. 1962) (finding in dispute over roadway easement that "any unlawful interference with a property right is a trespass").

*Metropolitan Nashville Airport Authority v. Colonial Pipeline Company*, Case No. 3:20-cv-00809 (the "Relocation Action").

Colonial's transparent attempt to circumvent the legislature and the law through artful pleading should not be permitted. The Supreme Court and the Sixth Circuit have rejected such attempts in other contexts, and so should this Court. *See Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 755, 197 L. Ed. 2d 46, 61 (2017) ("What matters is the crux—or, in legal-speak, the gravamen—of the plaintiff's complaint, setting aside any attempts at artful pleading"); *P.G. v. Rutherford Cty. Bd. of Educ.*, 313 F. Supp. 3d 891, 900 (M.D. Tenn. 2018) (finding Plaintiff's statement in an amended complaint, which was made to avoid Defendant's exhaustion defense, was "merely a conclusion of law that does not bind this Court. It is also the type of 'artful pleading' against which *Fry* warns.")

In short, Colonial's attempt to plead breach of contract in the Amended Complaint is an improper exercise in artful pleading undertaken in order to avoid GTLA limitations on damages and to create a first material breach defense to the Airport's action seeking specific performance of Colonial's obligations under the Easement Agreement. The proper cause of action for the facts pled in the Amended Complaint is unreasonable interference with easement. "[W]hile it may be tempting to flesh out the parties' arguments for them, it is improper for the courts to do so." *Brenay v. Schartow*, 709 Fed. Appx. 331, 337 (6th Cir. 2017). Colonial has failed to state a claim for breach of contract against the Airport. As a consequence, Count I of the Complaint should be dismissed.

### ii. The Implied Duty of Good Faith and Fair Dealing Does Not Give Rise To A Stand-Alone Claim for Breach of Contract

As discussed above, the Amended Complaint fails to identify any deficiency in the Airport's performance amounting to a breach of an express duty owed by the Airport to Colonial

under the Easement Agreement. In its Amended Complaint, Colonial relies on "implied" contractual rights to state its purported breach of contract claim, such as Colonial's "reasonable expectations and rights under the Easement Agreement" and "the implied duty of good faith and fair dealing." These implied duties do not give rise to an independent, stand-alone cause of action under Tennessee law.

"It is true that there is implied in every contract a duty of good faith and fair dealing in its performance and enforcement." *TSC Industries, Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. App. 1987). "The implied obligation of good faith and fair dealing does not, however, create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement." *Lamar Adver. Co. v. By-Pass Partners*, 313 S.W.3d 779, 791 (Tenn. Ct. App. 2009). "[T]he common law duty of good faith does not extend beyond the agreed upon terms of the contract and the reasonable contractual expectations of the parties." *Dick Broad. Co. v. Oak Ridge FM*, Inc., 395 S.W.3d 653 (Tenn. 2013) (citing *Wallace v. National Bank of Commerce*, 938 S.W.2d 684, 687 (Tenn. 1996)). "[T]he application of the duty of good faith and fair dealing is thus a matter of enforcing the parties' agreed-upon contract[.]" *Id.* at 669. "[A] claim based on the implied covenant of good faith and fair dealing is not a stand-alone claim; rather, it is part of an overall breach of contract claim." *Cadence Bank, N.A. v. Alpha Trust*, 473 S.W.3d 756, 773 (Tenn. Ct. App. 2015) (citing *Jones v. LeMoyne-Owen College*, 308 S.W.3d 894, 907 (Tenn. Ct. App. 2009)).

The Amended Complaint does not identify how the Airport has breached any express condition of the Easement Agreement to which the duty of good faith and fair dealing might apply as part of an overall breach of contract claim. To the extent the Amended Complaint alleges the Airport caused contamination, hazards to persons, property, the environment, or

4828-3496-4688

8

Case 3:20-cv-00666   Document 36   Filed 11/09/20   Page 12 of 14 PageID #: 324

adverse effects to Airport operations, none of these are obligations the Airport owes to Colonial under the terms of the Easement Agreement. Colonial is effectively asking this Court to read new, material, and unbargained-for terms into the Easement Agreement, rather than enforcing the parties' agreed-upon contract. The Easement Agreement only grants Colonial the rights to "operate, maintain, repair, replace and inspect its liquid petroleum products pipeline." Am. Compl. ¶ 9. The implied duty of good faith does not create new contractual rights, nor can it be used to circumvent or alter the specific terms of the Easement Agreement. *Lamar Adver. Co.*, 313 S.W.3d at 791. The argument that the Airport breached any implied covenant is without merit.

## CONCLUSION

For the foregoing reasons, the Court should grant the Airport's motion to dismiss Count I of the Complaint, Colonial's breach of contract claim against the Airport.

Dated: November 9, 2020.

>  */s/Paul S. Davidson*
> Paul S. Davidson (Tenn. BPR No. 011789)
> Edward Callaway (Tenn. BPR No. 016016)
> Michael C. Brett (Tenn. BPR No. 037290)
> WALLER LANSDEN DORTCH & DAVIS LLP
> 511 Union Street, Suite 2700
> Nashville, Tennessee 37219
> Telephone: (615) 850-8942
> Facsimile:  (615) 244-6804
> paul.davidson@wallerlaw.com
> ed.callaway@wallerlaw.com
> mike.brett@wallerlaw.com

## CERTIFICATE OF SERVICE

   I hereby certify that on November 9, 2020, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

L. Wearen Hughes
J. Andrew Goddard
Brian M. Dobbs
Bass, Berry & Sims PLC
150 3rd Ave. S., Suite 2800
Nashville, TN 37201
(615) 742-6200
whughes@bassberry.com
dgoddard@bassberry.com
bdobbs@bassberry.com

*Attorneys for Plaintiff Colonial Pipeline Company*

Gary C. Shockley
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
211 Commerce St., Suite 800
Nashville, TN 37201
(615) 726-5600
gshockley@bakerdonelson.com

*Attorneys for AECOM Technical Services, Inc.*

                  /s /Paul S. Davidson