**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **COLONIAL PIPELINE COMPANY,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 3:20-CV-00666** |
| **METROPOLITAN NASHVILLE AIRPORT AUTHORITY and AECOM TECHNICAL SERVICES, INC.,** | ) | **Judge William L. Campbell, Jr.**<br>**Magistrate Judge Alistair E. Newbern**<br>**JURY TRIAL DEMANDED** |
| **Defendants.** | ) | |

**METROPOLITAN NASHVILLE AIRPORT AUTHORITY'S RESPONSE IN OPPOSITION TO COLONIAL'S MOTION TO CONSOLIDATE**

Defendant Metropolitan Nashville Airport Authority ("the Airport") respectfully submits this Response in Opposition to Plaintiff Colonial Pipeline Company's ("Colonial") Motion to Consolidate dated October 28, 2020.

The Motion to Consolidate should be denied because (1) the risk of prejudice to the parties from consolidation is severe, including further delay of the Airport's BNA Vision expansion project and additional cost and expense for AECOM, a non-party to *Metropolitan Nashville Airport Authority v. Colonial Pipeline Company*, M.D. Tenn. No. 3:20-cv-00809 (the "Relocation Case"); (2) the above-captioned case (the "Line Strike Case") does not share significant common issues of law and fact with the Relocation Case, and to the extent common issues of law and fact exist, keeping the cases separate does not present any risk of inconsistent adjudications; and (3) Colonial has failed to identify overlapping discovery which might increase the burden on the parties if the cases are not consolidated.

## ARGUMENT

"The party moving for consolidation bears the burden of demonstrating the commonality of law, facts or both in cases sought to be combined, and the court must examine the special underlying facts with close attention before ordering a consolidation." *Lewis v. Walker*, No. 3:16-cv-00486-TAV-HBG, 2017 U.S. Dist. LEXIS 51135, *5 (E.D. Tenn. Apr. 4, 2017) (quoting *WCM Industries, Inc. v IPS Corp.*, No. 2:13-cv-02019, 2013 U.S. Dist. LEXIS 92958, 2013 WL 3349182, *2 (W.D. Tenn. July 2, 2013)).

In determining whether to exercise discretion to consolidate, courts consider "whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Cantrell v. GAF Corp.,* 999 F.2d 1007, 1011 (6th Cir. 1993) (quoting *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)). "Care must be taken that consolidation does not result in unavoidable prejudice or unfair advantage." *Id.* "[I]f the savings to the judicial system are slight, the risk of prejudice to a party must be viewed with even greater scrutiny." *Id.*

"Considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial. Consolidation is not justified or required simply because the actions include a common question of fact or law. When cases involve some common issues but individual issues predominate, consolidation should be denied." *Gamboa v. Ford Motor Co.,* 381 F. Supp. 3d 853, 866 (E.D. Mich. 2019).

### A. Consolidation Would Result in Unavoidable and Specific Risks of Prejudice to the Airport and AECOM.

Colonial's motion to consolidate should be denied because both the Airport and AECOM would experience significant, unavoidable, and specific risks of prejudice from consolidation. *See Cantrell,* 999 F.2d at 1011. The severe risk of prejudice is not outweighed by any other consideration that might favor consolidation. For the Airport and the public it serves, at stake in the Relocation Case is the operational success of the Airport and its BNA Vision expansion project. Traffic congestion at the Airport is already noticeable at peak times. If the expansion project does not proceed on schedule, the Airport will see significant slowdown by 2023 and gridlock by 2028. The expansion project urgently requires relocation of Colonial's pipeline by mid-2021 to stay on track.

Although Colonial has enjoyed all the benefits of its easement across the Airport's property for forty-four years, it now seeks to use this litigation as a means to delay its contractual obligation to relocate its easement to make way for the Airport's expansion. Consolidating the Relocation Case with the Line Strike Case will serve Colonial's objective by bogging down the straightforward and distinct question presented in the Relocation Case--whether Colonial is obligated to relocate its pipeline easement, as it agreed to do pursuant to the express language of the easement agreement--with the far more complex legal theories, factual proof, and expert proof presented in the Line Strike Case, including whether Colonial, the Airport, AECOM, TDOT, and/or other non-parties to the Relocation Case bear responsibility for the strike, the apportionment of fault to those parties under common law, the Governmental Tort Liability Act and the Oil Pollution Act, and the calculation of the parties' respective costs and damages.

In addition, AECOM is not a party to the Relocation Case. AECOM would be forced to incur significant cost and expense by participating in motions, discovery, and other proceedings

that have no relation to AECOM or its potential liability for the line strike. Colonial has failed to identify how AECOM plays a role in any of the facts or issues in dispute in the Relocation Case, and consolidating that case with the Line Strike Case would unnecessarily increase the burden on AECOM. *See* ECF No. 38.

Based on the risk of prejudice to the Airport and AECOM alone, Colonial's motion to consolidate should be denied.

**B. To the Extent The Two Cases Involve Common Questions of Law and Fact, Those Questions Are Insignificant And Present No Risk of Inconsistent Adjudications**

Colonial's motion to consolidate should also be denied because, although the two cases may involve limited common questions of law and fact, those common questions are not material or significant to the outcome of either case. There is no risk of inconsistent adjudications, and therefore no danger in keeping the cases separate. Even the possibility of inconsistent adjudications is also a neutralized where, as here, both cases are before the same judge and magistrate.

Colonial's memorandum of law in support of its motion to consolidate sets forth five (5) bullet points purporting to be "overlapping questions of law and fact in both cases." *See* ECF No. 30-1 at p. 4-5. However, upon inspection, none of the five questions overlap in any meaningful way.

**1. The Airport's Liability for Damages In The Line Strike Case Is Not A Question Relevant To The Relocation Case**

First, Colonial contends the Airport "is at least partially responsible for the consequences and damages arising from the line strike that occurred on [the Airport's] property and in connection with its potential projects, including the contamination and its effects on any line relocation and replacement." *See* ECF No. 30-1 at p. 4. Whether a jury ultimately finds the

4829-1451-6945.3

Airport bears some responsibility for the line strike has no bearing whatsoever on the Relocation Case; rather, the Airport's potential liability for damages arising out of the line strike only affects the Line Strike Case.

While both cases do allege breach of the same easement agreement, the allegations are based on different provisions of that agreement. In the Relocation Case, the Airport seeks a declaratory judgment and specific enforcement based on contractual language that states "Colonial will relocate its easements . . . at its sole cost and expense upon notification by [the Airport.]" In the Line Strike Case, Colonial seeks monetary damages based on its contention that the Airport's acts or omissions related to the April 9, 2019 line strike breached two distinct contractual provisions: first, interference with Colonial's rights to "construct, operate, maintain repair, replace and inspect its liquid petroleum products pipeline," and second, the Airport's duty "for itself, its successors and assigns, to prevent the use of the easement and real property which would interfere with or adversely affect the operation or maintenance of [the Airport.]" Though the easement agreement in both cases is the same, the nature of the breach allegations are very different.

A jury's determination of damages and its allocation of fault in the Line Strike Case will not provide Colonial a defense in the Relocation Case. To the extent Colonial is able to prove in the Line Strike Case that relocation of its pipeline was rendered more expensive by virtue of the line strike,[1] those increased expenses may factor into its damages calculation in the Line Strike Case. Consequently, this is not a common issue of law and fact between the two cases, and does not present any risk of inconsistent judgment.

---

[1] Relocation costs will be established after the pipeline has been moved in accordance with Colonial's performance obligation.

### 2. First Material Breach Doctrine is Inapplicable, and the Outcome of the Line Strike Case Is Not A Question Relevant to the Relocation Case

Second, Colonial contends consolidation is appropriate because the Airport's alleged responsibility for the line strike constitutes a first material breach of the easement agreement that excuses Colonial's obligations to relocate its easements as required under the easement agreement. This contention is without merit for three reasons: (1) Colonial has not stated breach of contract claim in the Line Strike Case, but only a claim for unreasonable interference with easement; (2) even assuming the Airport's alleged interference amounted to a breach of contract, the breach was not material and cannot excuse Colonial's obligation to perform; and (3) Colonial has, in any event, waived the first material breach defense because it has continued to accept the benefits of the easement with knowledge of the alleged breach.

Based on the facts alleged in the Colonial's Amended Complaint in the Line Strike Case, Colonial has not stated a breach of contract claim, and the Airport has filed a Rule 12(b)(6) partial motion to dismiss that claim. *See* ECF No. 35. While Colonial artfully attempts to plead breach of contract to avoid the limitations of liability under Tennessee's Governmental Tort Liability Act and to manufacture a first material breach defense, it has at most stated a claim for interference with easement, a tort. *See, e.g., Ute Water Conservancy Dist. v. Fontanari*, No. 15CV30590, 2016 Colo. Dist. LEXIS 8, *5 ("the first counterclaim must be dismissed under the [Governmental Immunity Act] because it could lie in tort despite the fact that it has been pled as a breach of contract claim.")

Second, assuming arguendo the Amended Complaint in the Line Strike Case stated a claim for breach of contract, first material breach doctrine is inapplicable because the alleged breach was not material. "When determining the materiality of a breach, Tennessee courts

consider the following factors: (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." *Spec's Family Partners, Ltd. v. First Data Merch. Servs. LLC*, 777 Fed. Appx. 785, 791 (6th Cir. 2019) (finding no material breach where party's non-compliance did not substantially defeat the contract's purpose) (citing *United Brake Sys., Inc. v. Am. Envtl. Prot., Inc*., 963 S.W.2d 749, 756 (Tenn. Ct. App. 1997)). Each of these factors is addressed in turn below.

The first factor is "the extent to which the injured party will be deprived of the benefit which he reasonably expected." Here, Colonial will not be deprived of a benefit it reasonably expected under the easement agreement. The easement agreement grants Colonial the rights to operate, maintain, repair, replace, and inspect its pipeline on the Airport's property. Colonial has never been deprived of that benefit and it continues to enjoy that benefit to the present day. Colonial was notified of the strike on the morning of April 9, 2019, the day it occurred (Am. Compl. ¶ 31); the proper emergency procedures were followed (Am. Compl. ¶¶ 45, 47, 53); and the pipeline was only shut down for two days for repairs (Am. Compl. ¶ 45). Apart from this two-day temporary interruption to Colonial's operations, Colonial has enjoyed uninterrupted use and enjoyment of the easement since 1976. It has also continued to enjoy uninterrupted use of the easement for more than a year and a half after the line strike.

Because Colonial has not been deprived of the benefit which it reasonably expected under the easement agreement, the first factor does not support a finding of material breach. *See, e.g., Madden Phillips Constr. v. GGAT Dev. Corp.*, 315 S.W.3d 800 (Tenn. Ct. App. 2009) (finding no material breach where contractor suspended performance on construction project, but returned to the job a month and a half later, and thereafter performed ninety percent of the project); *Adams TV, Inc. v. ComCorp of Tenn.*, 969 S.W.2d 917 (Tenn. Ct. App. 1997) (finding no material breach despite failure to comply with nondisclosure and confidentiality provisions in contract for sale of TV station, because the sale still took place).

The second factor is "the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived." There is no dispute Colonial can be adequately compensated in monetary damages. It has affirmatively sued the Airport and AECOM in the Line Strike Case for quantifiable costs and damages arising from the strike. The second factor does not support a finding of material breach.

The third factor is "the extent to which the party failing to perform or to offer to perform will suffer forfeiture." There has been no failure to perform by the Airport that will result in Colonial suffering forfeiture. Prior to Colonial's failure to mark its lines and the Tennessee Department of Transportation's ("TDOT") accidental line strike, Colonial enjoyed the uninterrupted benefits of the easement agreement. Following the strike, the pipeline was repaired in two days, and Colonial has continued to enjoy the benefits of the easement agreement ever since. It has not and will not suffer forfeiture. Any harm to Colonial is compensable through the damages it seeks in the Line Strike Case. The third factor does not support a finding of material breach.

The fourth factor is "the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances." The likelihood that the Airport will cure the alleged failure is one hundred percent: the pipeline was quickly repaired, and Colonial has been transporting gasoline across the Airport's property ever since. If the Airport is ultimately determined to have some responsibility for the strike, there is no reason to believe that it would not be able to satisfy a judgment. The fourth factor does not support a finding of material breach.

The fifth and final factor is "the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." Colonial cannot contend that the Airport's behavior did not comport with the standards of good faith and fair dealing. TDOT's strike of the pipeline while conducting soil boring tests was an unfortunate accident. TDOT followed the law in giving Colonial advance notice that it would be conducting soil boring tests in the area, and Colonial responded to TDOT's multiple Tennessee 811 Dig Request Tickets affirmatively stating that Colonial had marked its lines. *See* ECF Nos. 34-1, 34-2, 34-3. A jury is likely to find that Colonial's failure to properly mark its lines was the major factor contributing to the line strike. Colonial does not allege that the strike was the result of a malicious act of bad faith by the Airport or AECOM. The fifth factor does not support a finding of material breach.

Because Colonial has failed to demonstrate a material breach of the easement agreement by the Airport according to any relevant factor, Colonial's performance under the easement agreement is not excused by the first material breach doctrine. And because first material breach doctrine does not apply, there is no danger of inconsistent adjudications. Even if the Airport were found liable in the Line Strike Case, it would not change the analysis in the Relocation Case.

The third reason that the Airport's liability in the line strike case does not alter Colonial's obligation to move its easement is that, even assuming for the sake of argument the Airport *had* committed a material breach, Colonial has waived the first material breach defense. "A non-breaching party may nevertheless waive its right to assert first material breach as a bar to recovery if it accepts the benefits of the contract with knowledge of a breach." *Madden Phillips Constr.* 315 S.W.3d at 813. That is exactly the case here, where Colonial has had knowledge of the Airport's alleged material breach since the day of the pipeline strike, and yet continues to accept the benefits of the easement agreement by operating its pipeline on the Airport's land to the present day. *See Holt v. Whedbee*, No. E2018-01244-COA-R3-CV, 2019 Tenn. App. LEXIS 178, *20 (Tenn. Ct. App. Apr. 12, 2019) (rejecting first material breach defense because "[h]ere, Defendants continue to receive the benefits of the Agreement while no longer paying under the Agreement. This they may not do"). Colonial cannot have its cake and eat it too. It has waived any argument that first material breach doctrine serves to bar the Airport from enforcing the easement agreement in the Relocation Case.

Whether or not the Airport is ultimately found to bear some responsibility for the line strike, Colonial's obligation to relocate its easement to make way for the Airport's expansion will not change. The outcome of the Line Strike Case simply does not affect or overlap with the Relocation Case. To the extent Colonial has raised purported common questions of law and fact between the two cases, they are not significant, and do not merit consolidation.

**3. The Outcome of the Line Strike Case Does Not In Any Other Way Excuse Colonial From Its Obligations Under the Easement Agreement.**

Colonial's third bullet point purporting to assert an overlapping question of law and fact is a convoluted amalgamation of the contract issues discussed above. Colonial refers to the "effect of the above breaches on Colonial's obligations and defenses at issue in the Relocation

Case and with respect to [the Airport's] counterclaim in the Line Strike Suit," including (1) whether the Airport is entitled to damages or relief in either case; (2) whether Colonial is excused from its obligation to relocate its pipeline; (3) whether the Airport's claims are barred to the extent the line strike has made Colonial's relocation of the pipeline impracticable or impossible; (4) whether the Airport's claims are barred to the extent the line strike has frustrated the purpose of the easement agreement; (5) whether damages the Airport seeks were caused by the Airport, AECOM, or TDOT; and (6) whether Colonial is entitled to set off its damages from the line strike case against any damages or relief sought by the Airport in either case. Each contention is addressed in turn below.

With respect to (1) whether the Airport is entitled to damages or relief in either case, as discussed above, first material breach doctrine is inapplicable. The Airport's potential liability in the Line Strike Case does not affect its ability to recover in the Relocation Case. Further, the Airport does not seek monetary damages in the Relocation case; it seeks specific enforcement of the easement agreement. There is no conflict between the declaratory judgment relief sought by the Airport in the Relocation Case and the monetary damages sought by the Airport via its counterclaims in the Line Strike Case. The damages in the Line Strike Case bear no relation to the relief sought in the Relocation Case; they are entirely different claims based on different legal theories and on different sections of the easement agreement.

Concerning (2), whether Colonial is excused from its obligation to relocate its pipeline, again, first material breach doctrine is inapplicable. The breach alleged by Colonial in the Line Strike Case does not change its obligations and defenses in either case, nor does it excuse Colonial from its duty to relocate its pipeline in the Relocation Case.

On (3), whether the Airport's claims are barred to the extent the line strike has made Colonial's relocation of the pipeline impracticable or impossible, and (4), whether the Airport's claims are barred to the extent the line strike has frustrated the purpose of the easement agreement, these defenses have no merit. The purpose of the easement cannot have been frustrated, nor can performance have been made impossible, where Colonial continues to operate its pipeline on the Airport's land to the present day. To the extent Colonial contends the pipeline strike has made its relocation of the pipeline more expensive, Colonial cannot evade its express contractual duty simply because it costs more. Its remedy is to seek damages for any additional expenses in the Line Strike Case.

With regard to (5), whether damages the Airport seeks in the Line Strike case were caused by the Airport, AECOM, or TDOT--this question is not relevant to the Relocation Case. The straightforward and distinct issue in the Relocation Case is whether Colonial is obligated to relocate its pipeline given express language in an easement agreement to which Colonial and the Airport are the only parties. This question has nothing to do with any third party implicated in the Line Strike Case.

Finally, with respect to (6), whether Colonial is entitled to set off its damages from the line strike case against any damages or relief sought by the Airport in either case--this question does not merit consolidation. The Relocation Case seeks a declaratory judgment for specific enforcement of Colonial's obligation to move its easement under the easement agreement. Calculation of damages and the question of setoff based on Colonial's claims in the Line Strike Case and the Airport's counterclaims in the Line Strike Case are solely related to the Line Strike Case, and not the Relocation Case.

Colonial has not presented any significant common questions of law and fact that would create a risk of inconsistent adjudications.

**4. The Calculation of Colonial's Damages in the Line Strike Case Is Not A Question Relevant To The Relocation Case**

Colonial's fourth bullet point asserting a purported overlapping question of law and fact states "if Colonial is obligated to relocate its pipelines, the effect of the line strike and contamination on the timing, location, and cost of the relocation and replacement, including who should bear the cost." Similar to Colonial's first bullet point, whether the Airport is partially responsible for the line strike has no bearing on Colonial's express responsibility to relocate its pipeline at its own expense under the easement agreement. To the extent relocation of the pipeline has been made more expensive by virtue of the line strike, the cost of the relocation is still Colonial's responsibility. Any added expense resulting from the line strike may be compensable in damages awarded in the Line Strike Case. This is not a genuine overlapping question of law and fact.

**5. Third Parties Involved in the Line Strike Case Are Not A Question Relevant To The Relocation Case**

Colonial's fifth and final purported overlapping question of law and fact is "the effect of the line strike and contamination on the timing and location of [the Airport's] potential projects, including the effects of the contamination on TDOT projects related to or affecting [the Airport's] project and the effects on other third-party involvement or approvals (e.g., EPA, TDEC, US Coast Guard), which could ultimately impact the timing and cost of the Colonial pipeline relocation[.]" This statement attempts to confuse the singular issue presented in the Relocation Case--whether the Airport is entitled to a declaratory judgment specifically enforcing Colonial's performance obligations under the easement agreement--with the government permitting process

4829-1451-6945.3

and questions of liability for the line strike. The extent to which the pipeline relocation requires input from the EPA, TDEC, the US Coast Guard, and others who are not parties in either case or to the easement agreement, has no effect on the contractual duties which the easement agreement assigns to Colonial.

Ultimately, none of the five "overlapping questions of law and fact in both cases" proffered by Colonial give rise to any risk of inconsistent adjudications. Because no significant common questions of law and fact have been presented, this Court should deny the motion to consolidate.

### C. Colonial Has Not Identified Any Overlapping Discovery

Colonial contends there will be overlapping discovery and proof with respect to facts relevant to issues in both cases. *See* ECF No. 30-1 at p. 7-8. However, when evaluated carefully, the seven (7) bullet-point categories of potential discovery which Colonial identifies do not actually address questions common to both cases: the first four pertain only to the Line Strike Case, and the last three pertain only to the Relocation Case. Further, AECOM would be prejudiced by being forced to participate in discovery related to the Relocation Case, to which it is not a party. *See* ECF No. 38.

Colonial's first four bullet-point categories of purportedly overlapping discovery deal with the Airport's mapping data and what the Airport knew with respect to the location of Colonial's pipeline. This includes (1) how the Airport's GIS mapping data was developed; (2) an alleged previous line strike in 2012 and whether the Airport revised its mapping data in response; (3) any information the Airport has with respect to the location of Colonial's pipeline; and (4) mapping data provided by the Airport to TDOT. While these factual questions may be pertinent to the Line Strike Case, they have no impact on the Relocation Case. Colonial has not identified

how the Airport's mapping data is relevant to the question of whether Colonial must comply with its contractual obligation to relocate its easement.

Colonial's final three bullet-point categories of purportedly overlapping discovery deal with whether portions of Colonial's pipeline are somehow outside the scope of the easement agreement. This includes (5) prior relocations of portions of Colonial's pipelines and how the prior relocations were documented; (6) whether all portions of the pipeline are within the easement and subject to the easement agreement; and (7) the parties' prior dealings with respect to the easement, easement agreement, and pipelines. Colonial provides no explanation how prior movements of the pipeline could impact liability or damages in the Line Strike Case. In fact, Colonial's Amended Complaint in the Line Strike Case makes no mention at all of the prior movements of the pipeline and no allegation that the prior movements contributed in any way to the line strike. While Colonial does raise the question in the Relocation Case whether it is required to relocate portions of the pipeline that are outside the legal description set forth in the easement agreement, these questions could be relevant only to the Relocation Case and have no impact on the Line Strike Case.

Colonial has failed to identify any discovery that legitimately overlaps between the Relocation Case and the Line Strike Case.

## CONCLUSION

The risk of prejudice to the parties if these two cases are consolidated is severe, including further unwarranted delay of the Airport's BNA Vision expansion project and additional cost and expense for AECOM. The Line Strike Case does not share significant common issues of law and fact with the Relocation Case; keeping the cases separate does not present any risk of inconsistent adjudications; and Colonial has failed to identify overlapping discovery which might

increase the burden on the parties. For all of the foregoing reasons, the Airport respectfully requests that Colonial's Motion to Consolidate be denied.

Dated: November 12, 2020.

                                                              */s/ Paul S. Davidson*
Paul S. Davidson (Tenn. BPR No. 011789)
Edward Callaway (Tenn. BPR No. 016016)
Michael C. Brett (Tenn. BPR No. 037290)
WALLER LANSDEN DORTCH & DAVIS LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Telephone: (615) 850-8942
Facsimile: (615) 244-6804
paul.davidson@wallerlaw.com
ed.callaway@wallerlaw.com
mike.brett@wallerlaw.com

*Attorneys for Defendant*
*Metropolitan Nashville Airport Authority*

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2020, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

L. Wearen Hughes
J. Andrew Goddard
Brian M. Dobbs
Bass, Berry & Sims PLC
150 3rd Ave. S., Suite 2800
Nashville, TN 37201
(615) 742-6200
whughes@bassberry.com
dgoddard@bassberry.com
bdobbs@bassberry.com

*Attorneys for Plaintiff Colonial Pipeline Company*

Gary C. Shockley
Caldwell G. Collins
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
211 Commerce St., Suite 800
Nashville, TN 37201
(615) 726-5600
gshockley@bakerdonelson.com
cacollins@bakerdonelson.com

*Attorneys for AECOM Technical Services, Inc.*

*/s /Paul S. Davidson*

4829-1451-6945.3