UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| COLONIAL PIPELINE COMPANY )<br>)<br>*Plaintiff/Counter-Defendant* )<br>)<br>v. )<br>)<br>METROPOLITAN NASHVILLE )<br>AIRPORT AUTHORITY; )<br>)<br>*Defendant/Counterclaimant* )<br>)<br>AECOM TECHNICAL SERVICES, INC. )<br>)<br>*Defendant* ) | Case No. 3:20-cv-00666<br><br>Judge William L. Campbell, Jr.<br>Magistrate Judge Alistair E. Newbern<br>JURY DEMAND |

## INITIAL CASE MANAGEMENT ORDER

A. JURISDICTION: The court has jurisdiction pursuant to 28 U.S.C. § 1331 and 33 U.S.C. § 2717(b) because this action arises under the laws of the United States, including the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701–2720 ("OPA"), and 28 U.S.C. § 1332(a) because this action is between citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

B. BRIEF THEORIES OF THE PARTIES:

**For Plaintiff:**

Colonial and Defendant MNAA are parties to a 1976 Easement Agreement in which, among other things, MNAA granted Colonial the rights to "construct, operate, maintain, repair, replace and inspect its liquid petroleum products pipeline" within the easement. On April 9, 2019, employees of the Tennessee Department of Transportation, while conducting soil borings on MNAA property, and with the direct involvement of at least Defendant AECOM Technical Services, Inc. (MNAA's engineering firm), drilled into Colonial's pipeline within the easement on

airport property, discharging over 14,000 gallons of gasoline. The line strike created a hazard and has contaminated soils and groundwater in the area, and some of the gasoline has impacted nearby McCrory Creek. Colonial has a removal action ongoing under the supervision and direction of the EPA and TDEC, and has incurred, and likely will continue to incur (depending on the outcome of this case), millions of dollars in costs and damages as a result of the line strike.

Colonial contends the line strike constituted a breach of the Easement Agreement by MNAA with respect to the above provision and at least one other provision in the agreement, negligence by MNAA and AECOM, and trespass and wrongful interference with easement by AECOM, and seeks damages for those and contribution from MNAA and AECOM under the Oil Pollution Act. Colonial's complaint also includes a claim for implied indemnity against MNAA and AECOM and a claim against MNAA and AECOM under Section 2702(d)(1) of the OPA.

The soil borings that resulted in the line strike were being conducted as part of MNAA's potential expansion projects at the Nashville airport and TDOT's potential realignment of Donelson Pike near the airport. When the strike occurred, Colonial had been in discussions with MNAA, and in discussions with TDOT, about a potential relocation of Colonial's pipelines in connection with the potential projects. Pipeline relocation efforts have been complicated as a result of the contamination caused by the line strike, including potentially as to timing, location, and cost of a relocation.

After Colonial filed this action, MNAA filed a separate action in state court alleging, among other things, Colonial has breached the Easement Agreement by not relocating the pipelines at Colonial's cost and expense on MNAA's alleged timing, and seeking a declaratory judgment. Colonial removed that action to this Court (*Metropolitan Nashville Airport Authority v. Colonial Pipeline Company*, Case No. 3:20-cv-00809). The Court denied a motion by Colonial to

2

consolidate the cases. (ECF No. 46.) Colonial believes there are overlapping issues in the two cases that should be taken into account in case management in both cases.

**For Defendant MNAA:**

Defendant Metropolitan Nashville Airport Authority (the "Airport") is a governmental body under the Tennessee Governmental Tort Liability Act ("GTLA"). Plaintiff's liquid petroleum pipeline runs across the Airport's property pursuant to an easement agreement.

The Tennessee Department of Transportation ("TDOT") is engaged in projects in coordination with the Airport to realign Donelson Pike to expand and upgrade the Terminal Access Roadways and to allow for the Airport's expansion. These projects called for TDOT to perform soil boring tests on Airport property. TDOT was aware that it was responsible to communicate directly with outside utilities, such as Colonial, to locate and mark their own lines on Airport property. TDOT used the Tennessee One Call system to notify Colonial of the location of its soil boring tests and relied upon Colonial's response that the lines had been marked before drilling on the Airport's property. Although Colonial did respond to TDOT on multiple occasions, including in early April 2019, that its lines had been marked, Colonial failed to notify TDOT or the Airport that it had not marked its lines in the vicinity where the April 9, 2019 pipeline strike occurred.

The Airport denies that the pipeline strike and related costs are the result of any of its acts or omissions and denies it is liable for the acts or omissions of others, including, but not limited to, TDOT. The Airport denies liability to Colonial under any theory, including breach of the easement agreement, negligence or pursuant to the Oil Pollution Act. The Airport has filed a Rule 12(b)(6)motion to dismiss Colonial's contract claim for failure to state a claim. Colonial's contention that the Airport unreasonably interfered with its easement claim is not a contract claim. Artful pleading will not eliminate the limitations of liability set forth in the GTLA.

The Airport files counterclaims against Colonial for the damages it has incurred as a result of the pipeline strike for Colonial's failure to adequately mark its lines or to warn the Airport under theories of negligence, trespass, negligence per se, and for its failure to indemnify the Airport pursuant to the terms of the Easement Agreement.

**For Defendant AECOM:**

Defendant AECOM Technical Services, Inc. ("AECOM") served as an engineering consultant to the Metropolitan Nashville Airport Authority under a Professional Services Contract of March 2017. AECOM did not plan, oversee, supervise, direct, or participate in the geotechnical work of TDOT in the proposed relocation of Donelson Pike or other TDOT projects related to MNAA's BNA Vision effort. TDOT was advised by AECOM and MNAA that TDOT would need to locate all third-party easements, including that of Colonial, directly with the holder of the easement. AECOM reasonably relied upon the information available to it in performing its own work and was neither present nor participating in TDOT's sampling work at the time of the pipeline strike. Thereafter, AECOM responded reasonably and appropriately to the aftermath of TDOT's strike.

AECOM denies liability for trespass or interference with easement on the grounds that neither it nor any person or instrumentality under its control entered Colonial's easement. AECOM denies liability for negligence on the grounds that it acted reasonably in relying on information available to it in performing its own work and in instructing TDOT to clear TDOT's work locations with Colonial. AECOM denies liability under the OPA both because it is not a responsible party under 33 U.S.C. § 2701(32)(F) and because it is entitled to the third-party defense of 33 U.S.C. § 2703(a)(3). In the alternative, AECOM is entitled to comparative fault and equitable allocation with parties and non-parties. AECOM is not a party to the easement agreement at issue in Case No. 3:20-cv-00809.

C. ISSUES RESOLVED: Jurisdiction and venue.

D. ISSUES STILL IN DISPUTE: Liability and damages as to Colonial's claims and MNAA's counterclaim; MNAA's motion to dismiss Colonial's breach of contract claim.

E. INITIAL DISCLOSURES: The parties have exchanged initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1).

F. CASE RESOLUTION PLAN AND JOINT STATUS REPORTS:

As required by the Court's prior order (Doc. No. 32), the parties are scheduled to engage in a mediation of this matter and Case No. 3:20-cv-809 by January 31, 2021. The parties shall file a joint report of the mediation's results by no later than February 12, 2021.

Approximately fourteen (14) days after the conclusion of fact discovery, the parties shall submit a joint report confirming that the parties made a good faith attempt to resolve the case. The joint report shall also state whether the parties believe ADR might assist in resolution of the case. If a judicial settlement conference is requested in either joint report or separately, the parties shall also state (i) the reasons why mediation is not feasible; (ii) their proposed timing for scheduling of the settlement conference; and (iii) any preference of a particular Magistrate Judge to conduct the settlement conference.

G. DISCOVERY: The parties shall complete all written discovery and depose all fact witnesses on or before **June 1, 2021**. Written discovery should proceed promptly (unless otherwise provided for herein) and shall be served by no later than **March 12, 2021**. Discovery is not stayed during dispositive or other motions, unless ordered by the Court.

No discovery disputes may be brought to the Court for resolution before lead counsel for all parties has conducted an in-person meeting and made a good faith effort to resolve any dispute(s). Discovery disputes that cannot be resolved after the in-person meeting should be brought promptly to the attention of the Magistrate Judge by a request for a discovery conference.

It will be within the Magistrate Judge's discretion whether to allow for the filing of discovery-related motions. All discovery motions shall be filed by no later than **June 15, 2021**. In connection with any discovery conference or discovery motion, the parties shall file a joint discovery dispute statement, which describes the specific discovery request(s) in dispute and details each party's position with supporting facts and legal authorities. The joint discovery dispute statement shall certify that lead counsel for all parties conducted the aforementioned in-person meeting and made a good faith effort to resolve each discovery dispute presented in the statement. If the joint statement is sufficiently detailed, any party may adopt by reference the joint statement for purposes of Local Rule 7.01, but must clearly state in the filing made in accordance with the timing requirements of Local Rule 7.01 that the joint statement is adopted as the party's memorandum of law or response.

  H. MOTIONS TO AMEND OR TO ADD PARTIES: Any motions to amend or to add parties shall be filed by no later than **March 31, 2021**. Any motion to amend must be accompanied by the proposed amended pleading, which shall be appended as an exhibit to the motion. Prior to filing the motion to amend, counsel for the moving party shall discuss the proposed amendment with all other counsel and shall state in the motion to amend whether or not the motion is opposed.

  I. DISCLOSURE AND DEPOSITIONS OF EXPERTS: The plaintiff shall identify and disclose all expert witnesses and expert reports on or before **July 30, 2021**. The defendant shall identify and disclose all expert witnesses and reports on or before **September 1, 2021**. Rebuttal experts shall be permitted only by leave of court. Unless otherwise provided for in a separate pretrial order, supplemental expert disclosures, which specifically include, but are not limited to, any supplemental information to expert reports, must be made in accordance with Rule 26(a) and (e). Supplemental expert opinions or other expert disclosures not timely disclosed may

be excluded at trial. *See* Local Rule 39.01(c)(5.C). Expert depositions shall be completed by **November 1, 2021**.

J. SUBSEQUENT CASE MANAGEMENT CONFERENCE: A subsequent case management conference shall be held telephonically on **April 15, 2021, at 9:00 a.m.**, to address: status of discovery (including any known or anticipated discovery issues or disputes); prospect for settlement (including propriety of ADR); and, any other appropriate matters. The parties shall call (888) 557-8511 and enter access code 7819165# to participate.

K. DISPOSITIVE MOTIONS: As provided above, the parties must attempt to resolve the case prior to the filing of dispositive motions. Dispositive motions shall be filed by no later than **September 7, 2021**. Responses to dispositive motions shall be filed within 28 days after the filing of the motion. Briefs or memoranda of law in support of or in opposition to a dispositive motion shall not exceed 25 pages. Optional replies may be filed within 14 days after the filing of the response and shall not exceed 5 pages. No motion for partial summary judgment shall be filed except by permission of the Court. Any party wishing to file such a motion shall first file a separate motion that gives the justification for filing a partial summary judgment motion in terms of overall economy of time and expense for the parties, counsel, and the Court.

L. ELECTRONIC DISCOVERY: The parties anticipate reaching an agreement on how to conduct electronic discovery. Administrative Order No.174-1 therefore need not apply to this case. In the absence of an agreement, the default standards of Administrative Order No. 174-1 will apply. Any agreement between the parties to address the topics provided by Administrative Order No. 174-1 must be reduced to writing, signed by counsel, and either filed as a stipulation of agreed-upon electronic discovery procedures, or, if the parties request court approval, submitted as proposed agreed order with an accompanying motion for approval.

M.     MODIFICATION OF CASE MANAGEMENT ORDER: Any motion to modify the case management order or any case management deadline shall be filed at least seven (7) days in advance of the earliest impacted deadline. Unless a joint motion, the motion for modification must include a statement confirming that counsel for the moving party has discussed the requested modification or extension with opposing counsel and whether or not there is any objection to the requested modification or extension. The motion for modification must also include: (i) the trial date and all deadlines, even unaffected deadlines, so that it will not be necessary for the Court to review one or more previous case management orders in consideration of the motion and (ii) a statement that the requested extension will still conform to the requirements of Local Rule 16.01(h)(1) that no dispositive motion deadline, including response and reply briefs, shall be later than 90 days in advance of the trial date. Motions for extensions should also detail the moving party's efforts at diligently complying with the originally schedule deadline and the facts demonstrating good cause for modification of the deadline as required by Fed. R. Civ. P. 16(b)(4).

N.     REQUESTS TO SEAL DOCUMENTS OR PORTIONS OF DOCUMENTS: Any party requesting that documents or portions of documents be sealed, including without limitation for use as exhibits at trial, must file a motion to seal in accordance with Section 5.07 of Administrative Order No. 167 (Administrative Practices and Procedures for Electronic Case Filing) and Local Rule 7.01, which demonstrates compelling reasons to seal the documents and that the sealing is narrowly tailored to those reasons. The motion to seal, **even if unopposed**, must specifically analyze in detail, document by document, the propriety of secrecy, providing factual support and legal citations. Generally, only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence is typically enough to overcome the presumption of public access. Failure to comply with these procedures or to provide sufficiently compelling reasons may result

in denial of the request to seal documents or portions of documents. Protective orders should not provide that documents produced in discovery and designated as "confidential" will be automatically sealed upon filing or if used at trial. Any such language in proposed protective orders will be stricken and may result in denial of the motion for entry of the proposed protective order.

    O.    ESTIMATED TRIAL TIME AND TARGET TRIAL DATE: The **JURY** trial of this action is expected to last approximately **5** days. The target trial date is **March 15, 2022.**

    It is so **ORDERED**.

_____
United State Magistrate Judge