# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **COLONIAL PIPELINE COMPANY,** )<br>)<br>**Plaintiff,** )<br>)<br>)<br>v. )<br>)<br>**METROPOLITAN NASHVILLE** )<br>**AIRPORT AUTHORITY; and AECOM** )<br>**TECHNICAL SERVICES, INC.,** )<br>)<br>**Defendants.** )<br>) | **Case No. 3:20-CV-00666**<br><br>**Judge William L. Campbell, Jr.**<br>**Magistrate Judge Alistair E. Newbern**<br>**JURY TRIAL DEMANDED** |
| **METROPOLITAN NASHVILLE** )<br>**AIRPORT AUTHORITY,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**COLONIAL PIPELINE COMPANY,** )<br>)<br>**Defendants.** )<br>) | **Case No. 3:20-CV-00809**<br><br>**Judge William L. Campbell, Jr.**<br>**Magistrate Judge Alistair E. Newbern** |

## DECLARATION OF PAUL DAVIDSON, ESQ.[1]

Paul Davidson, upon being duly sworn, states as follows:

1. My name is Paul Davidson, I am more than 18 years of age, and I am of sound mind to make this declaration.

2. I am a partner at the law firm of Waller Lansden Dortch and Davis LLP ("Waller"), and I have been a partner since I joined the firm in 2005.

---

[1] On June 10, 2021, the Court held a status conference to discuss the logistics of submitting certain materials that Colonial claims are privileged or that discuss documents Colonial claims are privileged. The Court instructed such materials be submitted *in camera.* Consistent with the Court's directive, Exhibits 1-3 of this Declaration are being submitted *in camera* to the Court and not filed in the public record in this case.

3. I was retained by my client, Metropolitan Nashville Airport Authority ("the Airport"), to represent the Airport in all matters related to the April 9, 2019 strike of Colonial's pipeline on Airport property approximately one month after the line strike occurred. I was later asked to represent the Airport as a Defendant (and later) as a Counter-Plaintiff in Middle District of Tennessee Case Number 3:20-cv-666 (*Colonial Pipeline Company v. Metropolitan Nashville Airport Authority et al.*) at the time that case was filed by Colonial Pipeline Company ("Colonial") on July 31, 2020. This case is referred to as the "Line Strike Suit."

4. In connection with my representation of the Airport relating to the line strike, I was also consulted regarding Colonial's recalcitrance and lack of cooperation in taking the necessary steps to relocate its pipeline easement on the Airport's property. I had discussions on that issue with Colonial's in-house and outside lawyers during the summer of 2020. In September 2020, I was asked to represent the Airport as a Plaintiff (and later) as a Counter-Defendant in what is presently Middle District of Tennessee Case Number 3:20-cv-00809 (*Metropolitan Nashville Airport Authority v. Colonial Pipeline Company*). That case was originally filed in Davidson County Chancery Court, and subsequently removed by Colonial to this Court. This case is referred to as the "Relocation Suit."

5. I am lead trial counsel for the Airport in both the Line Strike Suit and the Relocation Suit. Based on my role as lead trial counsel, I am familiar with all the claims, defenses, and developments in both cases. In both cases, Colonial is represented by counsel from the law firm of Bass Berry & Sims ("Bass").

6. On or about January 11, 2021, that is, after these cases had been pending for several months and the parties had agreed to an early mediation, Colonial's counsel Drew Goddard called me, claiming that Colonial had found in its files a document that indicated Waller had previously

represented Colonial in connection with the Airport and therefore might have a conflict in representing the Airport in the current litigation. He told me that because Colonial did not have records reflecting the prior Waller representation, Colonial was requesting that Waller search for and produce any files it had relating to the so called "Airport Matter" and the "General Matter." I asked if he could send me a copy of the document Colonial found.

7. Shortly thereafter, Mr. Goddard sent me a copy of a Waller invoice from March 13, 2002, in matter called "Airport Authority" in which a then Waller attorney named Mike Mizell had performed 4.9 hours of work in February 2002.

8. As I have been a partner at Waller since 2005, I am somewhat familiar with Mr. Mizell's career at Waller and I know he left employment with Waller no later than 2010, a fact I have confirmed by consulting with someone at Waller with knowledge of the specific dates of Mr. Mizell's employment. During the time our paths crossed at Waller, it was my understanding that Mr. Mizell specialized in immigration law.

9. Until receipt of Mr. Goddard's email, I had no knowledge or awareness of the work Mr. Mizell had performed on the "Airport Authority" matter in 2002. Indeed, Mr. Mizell's work on the Airport Authority matter pre-dated my arrival at Waller by three years.

10. As Mr. Goddard suggested Waller might have a conflict in its representation of the Airport, I immediately informed both Waller's General Counsel (who also serves as the firm's ethics counsel) and the Airport.

11. Waller conducted an investigation into the work performed for Colonial during this time period to identify whether Waller had a conflict. This investigation included locating, gathering and furnishing materials to Mr. Goddard, in response to his continuing requests.

12. From Waller's investigation, I was informed that, because Waller ceased performing any services for Colonial as of approximately 2004, no files related to any Colonial representation are on site or are readily accessible at any Waller office. Rather, any files need to be pulled by special request to an offsite records vendor.

13. At my direction, and consistent with Mr. Goddard's request, the "Airport Authority" file and the "General" file was pulled from off-site storage.

14. All such material was scanned and delivered to Mr. Goddard for his review and at his request.

15. At no time during my communications with Mr. Goddard did he ever indicate that I should not review any files prior to sending them to him.

16. Rather, it was understood at the time that I might need to review the files prior to sending them in order to determine whether the correct material was in the file.

17. For instance, on February 3, 2021, with regard to the General file, Mr. Goddard wrote me and said "[w]hen we first spoke about possible conflicts, I noted that some of Waller's work for Colonial was billed to a 'General' matter [] and I asked that the files for it be reviewed. Can you confirm that Waller has reviewed the files for that matter and nothing related to MNAA is included in them?" In the same chain of correspondence, Mr. Goddard also later wrote, "Colonial also requests copies of all Waller bills to Colonial for the Airport matter and the General matter."

18. Mr. Goddard never instructed me not to look at any file, and, based on his communications to me, I understood that he wanted me to review them to see if they pertained to the Airport.

4811-5443-9661

4

Case 3:20-cv-00666   Document 83   Filed 06/10/21   Page 4 of 11 PageID #: 680

19. In order to assess whether there was a conflict of interest and to make sure the proper information was being delivered to Bass/Colonial, Waller's General Counsel and I agreed that we should review the general content of the "Airport Authority" file prior to submitting the material to Mr. Goddard.

20. A review of that file, combined with my comprehensive understanding of the actual allegations and claims in the Line Strike Suit and the Relocation Suit, confirmed to me and Waller's General Counsel that Waller was not and should not be disqualified from representing the Airport in the current litigation. In essence, there was no conflict, because the materials in the file had essentially no relation to the specific claims, allegations, and defenses in the two cases.

21. The "Airport Authority" file is a collection of documents, which are generally not written by anyone from Waller. Most of the documents date from around the turn of the last century, and most of the documents have nothing to do with the Airport or the 1976 Easement Agreement. Because of the "mishmash" nature of the file, no one would reasonably rely on the "Airport Authority" file to gain a substantive understanding of any concrete issue.

22. Attached to this Declaration as Exhibits are true and correct copies of three documents that are discussed in the Motion to Disqualify filed by Colonial; these materials were in the "Airport Authority" file that was transmitted to Mr. Goddard. Attached as **Exhibit 1** is a March 4, 1992 letter from a Bass attorney. Attached as **Exhibit 2** is a September 11, 2000 memo/letter from a Colonial in-house lawyer that mentions the 1992 Bass letter. Attached as **Exhibit 3** is an October 19, 2000 email from a Colonial in-house lawyer.

23. From my review of these materials, it is clear that no factual client confidences are disclosed in the three documents and the documents do not reveal any facts of which all parties are not generally aware. There is nothing in any of these materials that any attorney representing

the Airport in the present lawsuits could use to gain any advantage in the cases; the material recites basic, foundational points about matters of little consequence in this case.

24. I have also reviewed the Exhibits A-C attached to the Colonial Motion to Disqualify, which consists of a Waller invoice and two conflict checks performed by Leslie Shechter. I have consulted with the appropriate personnel at Waller and they have confirmed to me that Ms. Shechter was an attorney at Waller who left employment with the Firm in 2003.

25. In conjunction with Waller's investigation of this matter, the Firm was able to develop a spreadsheet that lists all the time entered by Waller timekeepers on the Airport Authority matter. A true and correct copy of that spreadsheet is attached as **Exhibit** 4 hereto. As one can see, the total time entered by all Waller timekeepers on the Airport Authority matter was 7.9 hours, with Mr. Mizell billing 7.5 hours and Ms. Shechter billing .4 hours.

26. The accuracy of the information contained in the spreadsheet is confirmed by two matching invoices. The first invoice is attached as Exhibit A to the Motion to Disqualify. The second invoice is attached as **Exhibit 5** to this Declaration. This invoice was in the Airport Authority file but was, through administrative oversight, omitted from the file sent to Mr. Goddard. The invoice has been provided to Colonial's counsel since the administrative oversight was discovered.

27. For purposes of analyzing whether there is a "substantial relationship" between the present matters and the past "Airport Authority" matter, it is important to understand what the claims and defenses in the two current lawsuits are. Each and every one of the claims and defenses in the Line Strike Suit relates to events that occurred in 2019 or after, 17 or more years after the previous "matter" concluded.

4811-5443-9661

6

Case 3:20-cv-00666   Document 83   Filed 06/10/21   Page 6 of 11 PageID #: 682

28. Likewise, in the Relocation Suit, Colonial has asserted three primary arguments to claim that it has no obligation to accede to the Airport's demand that Colonial move its pipeline. First, Colonial claims that the Easement Agreement, which establishes the obligation to move the pipeline in Section 3, is no longer enforceable because the Airport committed the first breach of the Easement Agreement through its acts or omissions in relationship to the 2019 Line Strike. Second, Colonial claims that portions of its easement that were previously relocated in 1986/87, 1992, and 1998 are no longer subject to the Easement Agreement because the legal description of the easement location in the Easement Agreement is no longer correct. Third, Colonial claims that, in 2000, it declined to sign a proposed amendment to the Easement Agreement that would have updated the location of the easement.

29. In February 2021, Mr. Goddard wrote an email to me stating that his firm's conflicts counsel had reviewed the material provided and was of the opinion that, absent a conflict waiver, Waller's representation of the Airport in the litigation was a violation of Tennessee Rules of Professional Conduct Rule 1.9 pertaining to former clients. In a follow up phone call, I explained to Mr. Goddard and his co-counsel Mr. Wearen Hughes that, based on my review of the files with Waller's General Counsel, a partner in our firm, Waller disagreed with the conclusion reached by Bass's conflicts counsel. Neither Mr. Goddard nor Mr. Hughes responded with an explanation of how the information in the file was related to any claim or defense in the case or could be used unfairly to harm Colonial or advantage the Airport.

30. I was informed by Mr. Goddard that Colonial was not at that time prepared to grant a waiver for the entire duration of the litigation, but would grant a limited waiver so that Waller could represent the Airport in the upcoming mediation. He could not say what Colonial would do if the mediation were not successful. In order to avoid any further delay (the parties had agreed to

mediation in November 2020), the Airport agreed to enter two limited waiver agreements that ended on termination of the mediation. A copy of the two limited waivers are attached to this declaration as **Exhibit 6**.

31. The mediation terminated unsuccessfully on March 16, 2021. The parties reported this fact to the Court on March 19, 2021. (*See* Line Strike Suit DE 57). After the mediation terminated, I engaged in numerous meet and confers with Bass lawyers and in Court conferences relating to discovery and scheduling. (*See, e.g.,* Line Strike Suit DE 58, 59, 60, 61, 62, 63). The parties agreed to a detailed joint discovery plan, which the Court entered as a scheduling order on April 5, 2021. (Line Strike Suit DE 62). During these numerous meet and confers and court conferences Colonial's lawyers did not mention the purported disqualifying conflict issue again to me or report the purported ethical issue to the Court.

32. On April 29, 2021 a Bass lawyer from the firm's Memphis office, who was not at the time counsel of record to Colonial in the litigation, wrote a letter dated April 29, 2021 addressed to Waller's General Counsel, its Managing Partner and to me stating that Waller was disqualified from representing the Airport in the current litigation, particularly in light of my review of the Airport Authority file. He asked for Waller's response by May 7 and stated that if Waller elected not to withdraw, Bass believed Colonial would instruct Bass to move for Waller's disqualification.

33. Waller responded on May 7 that the firm and the Airport carefully considered Colonial's position as stated in the April 29 letter and respectfully disagreed that Waller is or should be disqualified. Colonial's memorandum in support of its Motion states that Waller gave no substantive response. This is misleading, because by that time, I had already had conversations both with Mr. Goddard and Mr. Hughes explaining the basis for the firm's position.

34. While Colonial was apparently making the decision whether to instruct Bass to file a motion to disqualify, Bass lawyers and Waller lawyers conducted additional telephone conferences regarding discovery issues, filed joint status reports with the Court and participated in a telephone conference with the Court on May 10, 2021. (*See* Line Strike Suit DE 64, 65, 66). The Court entered an Order on May 10 compelling Colonial to provide a preliminary response to Interrogatory # 1 in the Relocation Suit. The Court also ordered that Colonial must include one of its in-house counsel on the list of custodians for purposes of searching for ESI. (Line Strike Suit DE 66). Colonial's disqualification motion was initially filed May 21, 2021.

35. Waller's General Counsel and I have consulted with the Airport's Board Counsel, its General Counsel and its Assistant Vice President Legal Counsel and they have confirmed that the Airport wishes Waller to continue to represent the Airport in these disputes. The Airport asserts that disqualification would result in extreme prejudice to the Airport, because, among other things, there would be a significant delay caused by disqualification and disqualification would force the Airport to expend considerable resources selecting and retaining new counsel as well as getting new counsel up to speed with respect to the facts, claims, defenses, and developments in these two cases.

36. It is clear to me, given the history of these two cases, that Waller's disqualification would jettison the Court ordered Joint Discovery Plan and would most likely result in postponement of the trials. Waller has offered without success to resolve this matter by sending the Airport Authority file to Bass, to use all commercially reasonable efforts to delete and destroy electronic copies, if any exist, and not to use any of the information in that file in the Litigation.

Further Declarant saith not.

I declare under penalty of perjury that foregoing is true and correct.

Executed this 10th day of June, 2021.

                                                   *s/ Paul S. Davidson*
                                                   Paul S. Davidson

**CERTIFICATE OF SERVICE**

       I hereby certify that on June 10, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties below as indicated on the electronic filing receipt. All other parties will be served by first class U.S. Mail. Parties may access this filing through the Court's electronic filing system.

| | |
|---|---|
| L. Wearen Hughes <br> J. Andrew Goddard <br> Brian M. Dobbs <br> Bass, Berry & Sims PLC <br> 150 3rd Ave. S., Suite 2800 <br> Nashville, TN 37201 <br> (615) 742-6200 <br> whughes@bassberry.com <br> dgoddard@bassberry.com <br> bdobbs@bassberry.com <br><br> *Attorneys for Colonial Pipeline Company* | Gary C. Shockley <br> Caldwell G. Collins <br> Baker, Donelson, Bearman, Caldwell & Berkowitz, PC <br> 211 Commerce St., Suite 800 <br> Nashville, TN 37201 <br> (615) 726-5600 <br> gshockley@bakerdonelson.com <br> cacollins@bakerdonelson.com <br><br> *Attorneys for AECOM Technical Services, Inc.* |

                                                *s/ Paul S. Davidson*

4811-5443-9661

11

Case 3:20-cv-00666   Document 83   Filed 06/10/21   Page 11 of 11 PageID #: 687