UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| COLONIAL PIPELINE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>METROPOLITAN NASHVILLE<br>AIRPORT AUTHORITY; and AECOM<br>TECHNICAL SERVICES, INC.,<br><br>Defendants. | Case No. 3:20-CV-00666<br><br>Judge William L. Campbell, Jr.<br>Magistrate Judge Alistair E. Newbern<br>JURY TRIAL DEMANDED |
| METROPOLITAN NASHVILLE<br>AIRPORT AUTHORITY,<br><br>Plaintiff,<br><br>v.<br><br>COLONIAL PIPELINE COMPANY,<br><br>Defendants. | Case No. 3:20-CV-00809<br><br>Judge William L. Campbell, Jr.<br>Magistrate Judge Alistair E. Newbern |

## JOINT DISCOVERY DISPUTE STATEMENT

In accordance with the Court's July 30, 2021 Order (3:20-cv-666 DE 97; 3:20-cv-809 DE 73) and pursuant to Section G of the Initial Case Management Order (3:20-cv-666 DE 50; 3:20-cv-809 DE 26) in these actions, the parties hereby submit this joint discovery dispute statement describing the specific discovery request(s) in dispute and detailing each party's position with supporting facts and legal authorities in advance of the videoconference with the Magistrate Judge set for August 4, 2021 at 2:00pm.

1

The parties disagree on two issues:[1]

1. Colonial Pipeline Company ("Colonial") requested access to the property of Metropolitan Nashville Airport Authority (the "Airport") to have Wood Environment & Infrastructure Solutions, Inc. ("Wood"), Colonial's consultant, who has been retained by Colonial's counsel in advance of Colonial designating an expert and providing an expert report, take soil borings in the area involving the "short route" of the proposed pipeline relocation. The Airport has agreed to provide access and has requested that Wood share split samples with the Airport's consultant. Colonial refuses to provide its sampling data for the short route unless the Airport provides data from the Airport's consultant's drilling and sampling over the entirety of the spill site. This afternoon, Colonial has taken the position that if the Airport will not agree to share its sampling over the entirety of the spill site in advance of Colonial doing sampling over the short route, then Colonial will want to take additional soil borings over the entire spill site.

2. Second, the parties disagree as to whether Colonial's requests for production #31 and #32 entitle Colonial to sampling data developed by the Airport's non-testifying consultant, who was hired by the Airport's counsel and did testing at the direction of the Airport's counsel after the litigation was filed (1) in advance of Colonial doing its own testing or (2) in advance of the Airport designating an expert and providing an expert report. Colonial's requests, and the Airport's responses, are excerpted in full below. The Airport's general objections, which are incorporated by reference in each of its responses, included objections to the production of attorney work product.

> **COLONIAL REQUEST FOR PRODUCTION NO. 31**: Documents concerning all soil and water sampling conducted by You or on Your behalf as a result of the 2019 Line Strike.

---

[1] Attached as **Exhibit 1** is an August 2, 2021 email chain between counsel showing areas on which the parties agree and those on which they disagree.

**AIRPORT RESPONSE**: Subject to, and without waiving its general objections, and pursuant to the parties' agreement regarding the application of custodians, date ranges, and search terms to the Airport's electronically stored information, the Airport will produce responsive, non-privileged documents.

**COLONIAL REQUEST FOR PRODUCTION NO. 32**: Documents concerning actual, proposed or contemplated contamination recovery, investigation, remediation and cleanup efforts to date and future plans, including environmental testing and remediation efforts to date, costs to date, and estimated future costs associated with recovery efforts and the remediation and cleanup of contamination related to the 2019 Line Strike.

**AIRPORT RESPONSE**: Subject to, and without waiving its general objections, and pursuant to the parties' agreement regarding the application of custodians, date ranges, and search terms to the Airport's electronically stored information, the Airport will produce responsive, non-privileged documents.

3. **Colonial's Position:** Colonial requests access to the site to conduct soil sampling, and is willing to provide split samples with MNAA and have observers for MNAA and AECOM present during the sampling. Colonial also is willing to have a full, mutual exchange of sampling data at the site if MNAA would agree to that.

If MNAA will not agree to share its full sampling data, Colonial requests that the scope of Colonial's sampling include the area involving the site of the line strike and suspected area of contamination. The reason for the scope of testing beyond what was originally requested is MNAA's refusal to share its soil sampling data for the larger area of suspected contamination, despite Colonial's outstanding discovery requests for production of such data (see discovery requests numbers 31 and 32 above).

Colonial's position is that all of the sampling data obtained by MNAA constitutes underlying facts that are responsive to Colonial's discovery requests and discoverable under Rule

26. *See Abbo-Bradley v. City of Niagara Falls*, 293 F.R.D. 401, 408 (W.D.N.Y. 2013)[2] ("[T]he work product doctrine does not immunize litigants or their consultants from disclosing the underlying facts obtained during the course of their investigations. Under these principles, the facts relating to the chemical composition of the materials obtained as the result of environmental sampling in the neighborhood surrounding the Love Canal Landfill site, as well as the location, manner, and timing of the sampling activity, are discoverable, potentially relevant, and not protected from disclosure by the work product doctrine."). In addition, "when a party takes a position in a case that places at issue the very information sought to be protected from disclosure by the work product doctrine, the protection may be waived." *Id.*; (quoting *Occidental Chemical Corp. v. OHM Remediation Services Corp.*, 175 F.R.D. 431, 435 (W.D.N.Y. 1997)); see also *Coastline Terminals of Connecticut, Inc. v. U.S. Steel Corp.*, 221 F.R.D. 14, 17 (D. Conn. 2003) (when property owner brought CERCLA response cost action against former owner, it placed at issue factual information contained in environmental consultant's reports with respect to site conditions, data and remediation efforts)). As in *Abbo-Bradley*, MNAA has not established that Colonial's requests for the sampling data are barred by the work product doctrine given the factual nature of the information and MNAA's placement of such factual information at issue in this case.[3]

Further, Colonial understands MNAA has discussed with the Tennessee Department of Environment and Conservation ("TDEC") the results of its testing. If that has occurred, any work product protection was waived as a result of MNAA's disclosure of such data to TDEC. *Schuh v.*

---

[2] For the Court's convenience, copies of all authorities cited herein are attached as collective **Exhibit 2**.
[3] While the court in *Abbo-Bradley* did take spoliation into consideration in granting a preliminary injunction (as MNAA points out below), its findings regarding the work product doctrine do not appear to be predicated on any such concern.

4

*HCA Holdings, Inc.*, 2014 WL 12768360, at *6 (M.D. Tenn. Sept. 16, 2014) ("[T]he work product protection, like the attorney-client privilege, can be waived by voluntary disclosure to a third party and such waiver applies to both fact work product and opinion work product.") (citing *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289 (6th Cir. 2002)).

As for AECOM's position (below), if the court determines MNAA does not have to turn over its sampling data at this time, the same should apply to Colonial's data.

4. **Airport's Position**: With respect to the first issue, the Airport has agreed to provide Wood access to its property in order to take soil borings along the "short route" of Colonial's proposed pipeline relocation, and has requested that the Airport receive split samples and data analysis for the drilling that Wood proposes to do. It is customary in environmental litigation to provide split samples to the landowner. *See Andres v. Town of Wheatfield*, No. 1:17-cv-00377, 2017 U.S. Dist. LEXIS 167465 (W.D.N.Y. Oct. 6, 2017) ("split sampling is a routine practice in environmental litigation and presents a necessary intrusion into an opposing party's investigative work"); 2 James T. O'Reilly, Toxic Torts Practice Guide § 17:13 (2d ed. 2017) ("Typically, a negotiated agreement will provide a time and manner of inspection and will provide for a split sample, one-half for each adversary, so that lab results can be fairly compared").

With respect to the second issue, the Airport's consultant's data over the entire spill site is not discoverable at this stage (or as a condition to Colonial sharing split samples along the "short route") pursuant to the work product privilege enshrined in Federal Rule of Civil Procedure 26(b)(4)(D). *See Genesco, Inc. v. Visa U.S.A., Inc.*, 296 F.R.D. 559, 581-582 (M.D. Tenn. 2014) ("The work product privilege also attaches to an agent's work under counsel's direction"). The Airport's consultant has not been designated as a testifying expert. The

consultant was retained by counsel for the Airport after this lawsuit was filed by Colonial, and no exceptional circumstances exist. *See Hartford Fire Ins. Co. v. Pure Air on the Lake, Ltd. P'ship*, 154 F.R.D. 202, 207-208 (N.D. Ind. 1993) ("Those parties seeking discovery of facts known or opinions held by consulting experts who are not expected to be called as trial witnesses have the burden of demonstrating the existence of exceptional circumstances. This burden has been characterized as a 'heavy' one.") (*citing In re Shell Oil Refinery*, 132 F.R.D. 437, 442 (E.D. La. 1990)). This is especially true where Colonial has had unfettered access to the site since April 9, 2019 (the date of the pipeline strike), Colonial prepared a site characterization study over the course of several months following the pipeline strike, and Colonial deliberately did not follow through on the plan of action outlined in its own site characterization study in order to avoid costs. Simply put, Colonial wants a free ride on the Airport's work before doing any of their own. *See Comm'r of Dep't of Plan. & Nat. Res. v. Century Aluminum Co.*, 279 F.R.D. 317, 319 (D.V.I. 2012), a case on all fours with this case ("Rule 26(b)(4)(D) and the work product doctrine are also designed to prevent parties from obtaining a free ride on the investigative efforts initiated or conducted by their opponents' attorneys in the course of litigation…[w]here all parties have had significant access to the relevant site or object over a period of time, courts have refused to compel disclosure of a non-testifying expert's data."). Contrary authority is distinguishable and this court is not bound by it. *See, e.g. Abbo-Bradley v. City of Niagara Falls*, 293 F.R.D 401 (W.D.N.Y. 2013) (granting preliminary injunction to share soil and groundwater data in part because of risk of spoliation); *Occidental Chem. Corp. v. OHM Remediation Servs. Corp.*, 175 F.R.D. 431, 435 (W.D.N.Y. 1997) (allowing discovery of scientific engineering data generated in the ordinary course of business prior to filing of litigation). Unlike *Abbo-Bradley*, which granted a motion for preliminary injunction where data had not yet been collected,

6

*Century Aluminum* matches the circumstances presented here: plaintiffs moved to compel production of "scientific data and/or recorded observations" generated by two marine biology consultants retained by the operators of an oil refinery which had allegedly discharged petroleum into neighboring marine environments. The court denied the motion to compel, because "the defendants' consultants are not currently designated as testifying experts and exceptional circumstances do not exist within the meaning of Rule 26(b)(4)(D)." Similar to this case, *Century Aluminum* involved requesting parties that had the opportunity to collect their own data during the course of litigation and failed to do so. Under the circumstances, Colonial cannot meet the "heavy" burden of demonstrating exceptional circumstances.

5. **AECOM's Position**: AECOM has asked to send an observer to view the sampling event proposed by Colonial but does not plan to take a third set of samples, which it believes would be unnecessary. AECOM believes that analytical data obtained by Colonial in this sampling event would be responsive to its Request for Production 5, 6, and 12 and would constitute underlying facts, not subject to work product protection. AECOM takes no position on the dispute between Colonial and MNAA over the proper scope of information sharing or the status of testing data obtained by MNAA's consulting expert at other locations.

6. The parties certify that lead counsel for all parties conducted an in-person meeting on July 30, 2021 and made a good faith effort to resolve each discovery dispute presented in this statement.

Respectfully submitted, this 3rd day of August, 2021.

/s/ Paul S. Davidson
Paul S. Davidson (Tenn. BPR No. 011789)
Edward Callaway (Tenn. BPR No. 016016)
Michael C. Brett (Tenn. BPR No. 037290)
Waller Lansden Dortch & Davis LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Telephone: (615) 850-8942
Facsimile: (615) 244-6804
paul.davidson@wallerlaw.com
ed.callaway@wallerlaw.com
mike.brett@wallerlaw.com

*Attorneys for Metropolitan Nashville Airport Authority*

/s/ L. Wearen Hughes
L. Wearen Hughes (BPR No. 5683)
J. Andrew Goddard (BPR No. 6299)
Brian M. Dobbs (BPR No. 25855)
Bass, Berry & Sims PLC
150 3rd Ave. S., Suite 2800
Nashville, TN 37201
(615) 742-6200
whughes@bassberry.com
dgoddard@bassberry.com
bdobbs@bassberry.com
jgolwen@bassberry.com

*Attorneys for Colonial Pipeline Company*

/s/ Gary C. Shockley
Gary C. Shockley (BPR No. 10104)
Caldwell G. Collins (BPR No. 28452)
Baker, Donelson, Bearman,
Caldwell & Berkowitz, PC
211 Commerce St., Suite 800
Nashville, TN 37201
(615) 726-5600
gshockley@bakerdonelson.com
cacollins@bakerdonelson.com

*Attorneys for AECOM Technical Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2021, this document was filed using the Court's electronic case management system which will send notice to:

Paul S. Davidson
Edward Callaway
Michael C. Brett
Waller Lansden Dortch & Davis LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
paul.davidson@wallerlaw.com
ed.callaway@wallerlaw.com
mike.brett@wallerlaw.com

*Attorneys for Metropolitan Nashville Airport Authority*

Gary C. Shockley
Caldwell G. Collins
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
211 Commerce St., Suite 800
Nashville, TN 37201
(615) 726-5600
gshockley@bakerdonelson.com
cacollins@bakerdonelson.com

*Attorneys for AECOM Technical Services, Inc.*

                s/ L. Wearen Hughes

9

Case 3:20-cv-00666   Document 98   Filed 08/03/21   Page 9 of 9 PageID #: 822