# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **COLONIAL PIPELINE COMPANY,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**METROPOLITAN NASHVILLE** )<br>**AIRPORT AUTHORITY; and AECOM** )<br>**TECHNICAL SERVICES, INC.,** )<br>)<br>**Defendants.** )<br>) | **Case No. 3:20-CV-00666**<br><br>**Judge William L. Campbell, Jr.**<br>**Magistrate Judge Alistair E. Newbern**<br>**JURY TRIAL DEMANDED** |
| **METROPOLITAN NASHVILLE** )<br>**AIRPORT AUTHORITY,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**COLONIAL PIPELINE COMPANY,** )<br>)<br>**Defendants.** )<br>) | **Case No. 3:20-CV-00809**<br><br>**Judge William L. Campbell, Jr.**<br>**Magistrate Judge Alistair E. Newbern** |

## JOINT DISCOVERY DISPUTE STATEMENT

In accordance with the Court's July 30, 2021 Order (3:20-cv-666 DE 97; 3:20-cv-809 DE 73) and pursuant to Section G of the Initial Case Management Order (3:20-cv-666 DE 50; 3:20-cv-809 DE 26) in these actions, the parties submit this joint discovery dispute statement describing the specific discovery request(s) in dispute and detailing each party's position with supporting facts and legal authorities in advance of the videoconference with the Magistrate Judge set for 12:00 pm on September 10, 2021.

The parties disagree on one issue: the extent to which, if at all, communications between Colonial Pipeline Company ("Colonial") and Kleinfelder, Inc. ("KLF") are protected by the attorney client privilege or attorney work product doctrine.

1. **Airport's Position**:

Colonial (not KLF) has withheld KLF documents from production which are not protected by attorney client privilege or the work product doctrine.[1] Moreover, to the extent any such protection ever existed, Colonial has waived it by providing deficient privilege logs. KLF was hired in the ordinary course of Colonial's business to provide engineering design services under a 2016 Master Services Agreement (**Exhibit 1**). Colonial has provided no evidence in support of its belated claim that KLF was hired to aid counsel in litigation or provide legal advice related to the April 2019 Line Strike or otherwise. The overwhelming evidence demonstrates KLF was engaged by Colonial's relocation project manager in the ordinary course well prior to the April 9, 2019 Line Strike, the filing of the Line Strike Case in July 2020, and the filing of the Relocation Case in September 2020.

---

[1] On February 25, 2021, the Airport sent a subpoena (**Exhibit 2**) to KLF seeking, *inter alia*, documents showing the terms of KLF's engagement, the scope of KLF's work, and a variety of other documents and communications related to KLF's work for Colonial. Colonial reviewed the responsive KLF documents and on April 8, 2021, Colonial (not KLF) produced KLF documents and two privilege logs, one reflecting 139 documents that Colonial withheld entirely (**Exhibit 3**) and another reflecting 40 documents that Colonial redacted (**Exhibit 4**). The withheld privilege log (**Ex. 3**) contains a column titled "attorney comments" that is entirely blank.

After reviewing the documents produced and the two defective logs, the Airport sent a deficiency letter (**Exhibit 5**) noting, among other things: (1) Colonial had failed to comply with Fed. R. Civ. P. 26(b)(5)(A)(ii) because it failed to describe the documents being withheld or why they were being withheld; (2) neither privilege nor work product protection applied given KLF's role as an engineering consultant not retained in anticipation of or in connection with litigation or legal services; and (3) a number of documents withheld or redacted had no connection to any attorney at all. In response to the Airport's deficiency letter, Colonial released 61 previously withheld documents and 19 previously redacted documents and produced two revised (but not improved) privilege logs, one for withheld documents (**Exhibit 6**) one for redacted documents (**Exhibit 7**). As of this date, there remain 78 KLF documents withheld by Colonial (*see* **Ex. 6**) and 21 KLF documents redacted by Colonial (*see* **Ex. 7**).

4816-3515-7498

All available evidence shows that KLF was retained by Colonial's Manager of Relocation Projects and that its work before *and* after the Line Strike was done in the ordinary course of Colonial's business.

The work included, for example, gauging the pros and cons of various relocation options (12/19/18 Kleinfelder Memo, **Exhibit 8**), review of Colonial's reimbursement rights (1/28/2019 email, **Exhibit 9**), and—later on in the project—assisting in preparing proposals to TDOT. Communications *after* the Line Strike confirm that KLF's role had not changed. (*See, e.g.,* 12/17/19 email re: KLF "Scope of Services," **Exhibit 10**; 4/22/20 email chain and memo explaining the estimated construction cost of various relocation options, **Exhibit 11**). None of these emails or memos suggest or discuss confidentiality, legal support, legal consulting services, or any anticipated litigation.

At the August 31, 2021 deposition of Dan Jacobsen, Colonial's former relocation project manager (excerpts of rough draft attached as **Exhibit 12**), the Airport's counsel attempted to determine the basis for Colonial's privilege claims, including whether KLF's role had ever changed from providing engineering services in the ordinary course to providing legal consulting services to Colonial's counsel in connection with the Line Strike. Shockingly, counsel for Colonial instructed the witness not to answer any such questions.[2] Despite these improper objections, the witness was able to get one answer in and, not surprisingly, that answer was: "I am not aware that their role ever changed." (*Id.* at 220:13-14.)[3]

---

[2] *See, e.g.,* **Ex. 12** at 219-221; *id.* at 219 ("Q. Well, I'm trying to understand, you know and I think this is important to understand, that if there was a change in the scope of work where Kleinfelder went from design engineer working with you as project manager in the ordinary course to serving as a consultant to legal counsel, do you know when that occurred, if it did? MS. ZIEGLER: Again, I instruct him not to answer . . . .").

[3] Counsel also clawed back two documents during the deposition, copies of which will be submitted to Chambers *in camera*. In addition to this inappropriate attempt to disrupt a deposition by clawing back documents that were produced unredacted and are not privileged on their face (because they do not actually seek or convey legal advice), counsel for Colonial **objected 238 times** during the deposition and **instructed the witness not to answer at least 30**

4816-3515-7498

Other portions of Mr. Jacobsen's deposition made KLF's consistent and unchanging role clear. *See, e.g.,* **Ex. 12** at 47-48 **("Q. [Y]ou said that you engaged Kleinfelder in the ordinary course of your work as project manager to assist you on this project the same way you would have engaged Kleinfelder to work on any other project in the ordinary course of your work**; **is that right?** [objection to form] **A. Yes**." (emphasis added)).[4]

KLF was retained neither in anticipation of litigation nor to provide 'translation' services so that Colonial's counsel could understand technical matters more clearly in an effort to render legal advice to their client. *See, e.g., U.S. v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961). Courts routinely reject claims of work product or attorney-client privilege protections over communications with engineering consultants such as KLF. *See, e.g., U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*, 852 F. Supp. 156, 161 (E.D.N.Y. 1994) (communications with engineering consultants not privileged because consultants were not employed "specifically to assist them in rendering legal advice"); *Occidental Chem. Corp. v. OHM Remediation Servs. Corp.*, 175 F.R.D. 431, 437 (W.D.N.Y. 1997) (communications with consultants not privileged because "Rust's function 'was not to put information gained from [plaintiff] into usable form for [its] attorneys to render legal advice . . . .'"); *Am. Mun. Power, Inc. [AMP] v. Voith Hydro, Inc.*, 2020 WL 5014914,

---

**times**, despite requests from counsel for the Airport to cease disrupting the deposition and/or signaling to the witness through repeated objections. The Airport contends such behavior is inappropriate, it would not be tolerated at trial, and the Airport requests that Colonial's counsel be admonished pursuant to Fed. R. Civ. P. 37(b)(2) and 28 U.S.C. § 1927 to discontinue this practice.

[4] *See also, e.g.,* **Ex. 12** at *id* 19 (describing KLF as "my engineering team" and an "outside contract resource" to be used for the "relocation program"); *id.* at 37 (confirming that **KLF was hired "in 2018 to assist you with the relocation project at the airport"**); *id.* at 38 (confirming that KLF had been established as a partner of Colonial since 2009 "in the ordinary course of [the witness's] work as a . . . relocation manager"); *id.* at 46 (noting that the easement issue would not have been discussed with KLF because it's "not really their role to -- to do anything with easements. They design, and they help me procure, and they help me construction inspect, construction manage. **They have no role in looking at easements or understanding them**." (emphasis added)); *id.* at 146-147 ("Q. In other words, **[KLF] weren't engaged by Colonial on the airport project to do something that they don't normally do in the ordinary course of their work on other projects, were they? A. That's correct.**" (emphasis added)).

at *8-9 (S.D. Ohio Aug. 25, 2020) ( "no evidence clearly establishing that MWH was specifically retained as a litigation consultant – by either AMP or AMP's counsel").[5]

In the parties' September 3, 2021 meet and confer on this issue, Colonial asserted that KLF performed a "dual role"[6] of both engineering consultant and litigation consultant. In response to the Airport's counsel requesting some evidence to support this claim, Colonial's counsel replied "we will address that in the joint statement. There is no substantiating evidence. There is absolutely no proof.[7] The logs themselves indicate no communications connected to either the Line Strike or the Relocation Case; rather, the logs and documents that were produced indicate the opposite: that KLF was retained for engineering services and to attempt to maximize Colonial's reimbursement from TDOT. The *ipse dixit* of Colonial is insufficient to carry its burden to prove (1) that KLF became a litigation consultant at some point; (2) the scope of KLF's litigation engagement; and (3) that privilege or work product protection actually applies, document-by-document.[8]

---

[5] *See also, e.g., In re Grand Jury Matter*, 147 F.R.D. 82, 85 (E.D. Pa. 1992) (if documents and communications "were made simply in the course of providing environmental services by the expert consultant to the company, they are not protected even though some of them may be documentation of communications between the expert consultant and the law firm"); *id.* ("[T]he documents were made in the course of the expert consultant's provision of environmental services to the company, and not for the purpose of assisting the law firm in providing legal advice to the company.").

[6] Importantly, the Tennessee case cited by Colonial below, *Myers v. Pickering Firm*, deals with the Tennessee litigation privilege, not attorney client privilege or work product protection. The mention of a "dual role" is merely in passing, and has nothing to do with the ruling in that case, which dealt with claims of defamation and procurement of breach of contract. 959 S.W.2d 152, 161 (Tenn. Ct. App. 1997).

[7] Colonial cites *Roxworthy* for the "dual role" proposition, but ignores that in that case the proponent of work product protection "moved to expand the record to include additional affidavits and deposition testimony" demonstrating, in detail, how the documents at issue were created in anticipation on litigation. *U.S. v. Roxworthy*, 457 F.3d 590, 592 (6th Cir. 2006). Colonial has not offered any such proof, nor has it even attempted to explain the role that KLF supposedly played.

[8] Despite the fact that Colonial has (1) failed to carry its burden in demonstrating that KLF is a litigation consultant; (2) failed to carry its burden demonstrating that the documents in question are actually privileged or protected work product; and (3) waived its objections based on its failure to comply with Rule Fed. R. Civ. P. 26(b)(5)(A)(ii), should the Court decide that such protections *might* apply, an *in camera* review of the documents is clearly appropriate, particularly given Colonial's position that the protections apply on a document-by-document basis.

4816-3515-7498

To the extent any of the withheld or redacted documents were ever protected, Colonial has waived any such protections by its repeated failure to comply with Fed. R. Civ. P. 26(b)(5)(A)(ii). Neither the original nor revised privilege logs contain <u>any</u> information substantiating the work product or privilege claims beyond the recipient names, subject line, and other standard information. (*See* **Ex. 3-4**, **6-7**.) As such, Colonial has waived its objections.[9] Because Colonial cannot meet its burden to show that the documents withheld or redacted are properly protected from disclosure, they should be produced so that they can be used in upcoming depositions.

2. **Colonial's Position**:

Colonial respectfully requests permission to exceed the three-page limit on position statements set by the Court in its September 7, 2021 Order.

Kleinfelder serves Colonial in a dual capacity: It provides engineering services, and, following the line strike, it has provided consulting services in anticipation of and during litigation. Based on the latter role, Colonial withheld certain documents from production in this litigation based on claims of attorney-client privilege and work product. In response to MNAA's initial objections to its privilege claims, Colonial reviewed its privilege log and made a supplemental production of some 112 documents. The remaining documents clearly fall within Colonial's privilege.

---

[9] *See, e.g., Etheredge v. Etheredge*, 2013 WL 4084642, at *5 (M.D. Tenn. Aug. 12, 2013) ("Here, the Defendants' responses to Plaintiff's motion and to Plaintiff's discovery requests for similar information **fail to provide any information to enable the Court to determine the appropriateness of the privileges asserted** for information that the Defendants provided to Merrill Lynch. . . . Thus, the Court concludes that the Defendants' failures to do so constitute **waivers of all privileges** asserted in their motions to quash." (emphasis added)); *Smith v. Dow Chem. Co.*, 173 F.R.D. 54, 58 (W.D.N.Y. 1997) ("The information provided by defendants in support of their assertion of the privilege is simply not sufficient to enable the court to determine whether the privilege, even if it exists, applies") (overruling privilege objections and granting motion to compel); *United States v. Constr. Products Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) ("We have reviewed Respondents' privilege log, and find it deficient. The log contains a cursory description of each document, the date, author, recipient, and 'comments.' Further, under a heading entitled 'Basis of Claim,' each of the documents listed is alleged to be an 'Attorney–Client Communication'") (upholding District Court's decision to overrule objections based on privilege and work product grounds).

4816-3515-7498

6

Case 3:20-cv-00666   Document 109   Filed 09/08/21   Page 6 of 16 PageID #: 999

Colonial maintains the documents involving Kleinfelder are appropriately protected under the attorney-client privilege and/or work produce doctrine. Kleinfelder assisted Colonial in a consulting-expert role in anticipation of litigation following the line strike and continued to serve in that capacity after the line strike and pipeline relocation cases were filed. Black letter law provides that documents prepared in anticipation of litigation are protected work product. *See, e.g., Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 713 (6th Cir. 2006). The Sixth Circuit applies a "because of" test to determine if documents are created in anticipation of litigation: documents "prepared or obtained because of the prospect of litigation" are entitled to protection under the work product privilege. *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006).

MNAA has articulated no basis for establishing that Colonial has not satisfied that standard here, other than stating that (i) Colonial retained Kleinfelder before the instant litigation, (ii) Kleinfelder was initially engaged for business purposes, and (3) a consulting expert engagement letter has not been produced.

As to this first argument, the timing of the engagement does not defeat Colonial's claim of work product protection, which has been asserted on a document-by-document basis to apply to documents that would not have been created but for a reasonable anticipation of litigation after the line strike. Nor is it material that Kleinfelder has served a dual function of providing both business and litigation assistance once Colonial reasonably began to anticipate litigation. Documents prepared by consultants in anticipation of litigation are explicitly protected as work product under Tennessee law. *See* Tenn. R. Civ. P. 26.02(3) (listing documents prepared by "consultants" as protected work product). This is true even if a consultant performs a dual role, in which case those documents and communications pertaining to the litigation are appropriately subject to work-

product protection. *See, e.g., Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152, 160–61 (Tenn. Ct. App. 1997) (holding privilege applied to documents shared by consultant hired to provide expert witnesses and furnish litigation-related information in construction lawsuit where the consultant had also been hired to provide solutions for existing construction problems). Federal law is in accord: Kleinfelder's "dual role" does not defeat Colonial's work product claim here. *See, e.g.*, *U.S. Inspection Servs., Inc. v. NL Engineered Sols., LLC*, 268 F.R.D. 614, 619–20 (N.D. Cal. 2010) (holding, based on "the totality of the factual circumstances," that privilege applied to information shared with consultant "even though [the consultant's] retention served a dual purpose of assisting with" a business function).

Moreover, *Roxworthy* recognized that "the key issue in determining whether a document should be withheld is the ***function that the document serves***." 457 F.3d 590, 595 (6th Cir. 2006) (emphasis added) (overturning district court order compelling production and holding that work-product doctrine applied). In so holding, the Sixth Circuit joined multiple circuits in recognizing that "a document can be created for both use in the ordinary course of business and in anticipation of litigation without losing its work-product privilege. To the extent that [lower court's] findings turned on a requirement that the primary or sole purpose of the [document at issue] be in preparation of litigation, we conclude that the magistrate judge relied upon an incorrect interpretation of the law." *Id*. at 599. As in *Roxworthy*, courts around the country have applied the "because of" test to afford work-product protection to documents that may serve a dual purpose of both business and litigation. *See, e.g., In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 909–10 (9th Cir. 2004) ("We conclude that the withheld documents, notwithstanding their dual purpose character, fall within the ambit of the work product doctrine. Here, the documents are entitled to work product protection because, taking into account the facts

surrounding their creation, their litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole.").

Nor is the existence or nonexistence of an engagement letter from Colonial to Kleinfelder determinative of Kleinfelder's status as a consulting litigation expert. *See, e.g.*, *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 315CV07658MASLHG, 2021 WL 2587784, at *8 (D.N.J. June 24, 2021) (noting an engagement letter is "not in and of itself dispositive" to outcome of motion to compel documents withheld on the basis of the work-product doctrine); *Columbia Data Prod., Inc. v. Autonomy Corp.*, No. CIV.A. 11-12077-NMG, 2012 WL 6212898, at *15 (D. Mass. Dec. 12, 2012) (holding existence of engagement letter, itself, was not determinative on question of whether work-product doctrine applied).

MNAA's claim that Dan Jacobsen testified at his deposition that Kleinfelder was initially engaged by Colonial in the ordinary course of business is not only irrelevant but also misleading. Mr. Jacobsen testified that Kleinfelder was originally retained in the ordinary course but also testified that he did not know whether Kleinfelder was consulting with others at Colonial in anticipation of litigation. (D. Jacobsen Dep. 204:11-205:25). Mr. Jacobsen is one of many Colonial persons who have been involved in these matters and was not privy to many of the discussions with Colonial's legal counsel and thus would not have known whether certain documents were generated in anticipation of litigation. MNAA's narrow focus on Kleinfelder's initial engagement elevates form over substance. Mr. Jacobsen's full testimony is consistent with Colonial's designation of work product as to these documents and does not form the basis for any credible demand to produce them.

Colonial also maintains that certain communications and documents surrounding a set of documents known as the "A-Date package" are privileged. As previously stated, Kleinfelder held

a dual relationship with Colonial: Colonial initially hired Kleinfelder as an engineering contractor and expanded Kleinfelder's responsibilities after the line strike to include expert consulting. In particular, after the line strike, Kleinfelder was involved in assisting Colonial in the preparation and submission of its A-Date package to the Tennessee Department of Transportation ("TDOT"). Certain communications with Kleinfelder about the A-Date package, and documents generated in relation thereto, include communications with, and the mental impressions of, Colonial's legal department, particularly in light of this litigation.

MNAA also mischaracterizes Dan Jacobsen's testimony regarding whether in-house counsel was involved in preparation of the A-Date package. MNAA cites Jacobsen's testimony for the proposition that none of Colonial's communications with Kleinfelder sought attorney advice. In fact, Jacobsen simply stated that he was not aware of whether Colonial in-house counsel Meg Blackwood had a role in preparing the A-Date package. (D. Jacobsen Dep. 21:6-13). Additionally, MNAA misstates Mr. Jacobsen's testimony when it claims that he testified that Colonial was not anticipating litigation after the 2019 line strike. Again, he stated that he was simply not aware of conversations on the topic. (*See* D. Jacobsen Dep. 205:19-25). Colonial's legal department was involved in communications with Kleinfelder regarding the A-Date package, and certain other communications with Kleinfelder reflect the thoughts and impressions of Colonial legal. Thus, not only are communications surrounding the A-Date package attorney-client privileged as a result of the engagement of Kleinfelder as a consulting expert, *Fed. Deposit Ins. Corp. v. Bryan*, No. 1:11-CV-2790-JEC-GGB, 2012 WL 12835873, at *5 (N.D. Ga. Nov. 28, 2012), *aff'd*, No. 1:11-CV-2790-JEC, 2014 WL 11517836 (N.D. Ga. Feb. 14, 2014) ("[d]isclosures to a third-party consultant do not destroy attorney-client privilege if the consultant's presence is relevant to the legal issues

being addressed"), but they are also privileged under the work product doctrine due to the anticipated litigation following the line strike.

Finally, MNAA argues that it cannot discern from Colonial's privilege log whether its assertions of privilege are correct. But Colonial followed the requirements that the parties agreed to in the Agreed Order Regarding Discovery of Electronically Stored Information (*see* Dkt. 38 at 6–7), and MNAA's privilege log essentially contains the same level of information with respect to the substance of the withheld communications.

Colonial provided its position statement to MNAA and AECOM at noon today and requested that the other parties reciprocate so that all parties would have an opportunity to review and address each other's position. Colonial did not receive the other parties' position statements until 4:30 p.m. and, given their length, did not have an opportunity to review or address them. In the event this issue cannot be resolved at the status conference or otherwise by agreement of the parties, Colonial requests that MNAA be required to file a motion regarding this issue so Colonial can have the opportunity to respond to MNAA's arguments and brief them fully.

3. **AECOM's Position:**

It appears that Colonial retained Kleinfelder as its engineering consultant on pipeline relocation for the Airport project, well before the line strike or any reasonable prospect of litigation. Deposition of Dan Jacobsen 19:7-21:5; 37:10-39:11; 46:19-48:5; 49:22-50:8. Any work performed by Kleinfelder in that business role, of course, would not be subject to the attorney work product doctrine. *United States v. Roxworthy*, 457 F.3d 590, 598-99 (6th Cir. 2006). Following an initial inquiry by MNAA, Colonial produced over 100 documents originally claimed as work product on August 27, 2021. Based on the testimony of Colonial's Dan Jacobsen, MNAA now contends that the remaining documents were likewise prepared in the normal course of

Kleinfelder's role as a pipeline relocation consulting engineer, not in anticipation of pending or threatened litigation. Fed. R. Civ. P. 26(b)(3). Because it is difficult to discern from the Kleinfelder privilege log which hat—relocation engineer or litigation consultant--Kleinfelder wore when producing individual documents, AECOM supports MNAA's position and requests an in camera review of at least a sample of the disputed Kleinfelder documents.

The attorney work product doctrine is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure:

> **(3) Trial Preparation: Materials.**
>
> (A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means
>
> (B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3), (4).

It is settled that the party asserting the protection of the work product doctrine bears the burden on each of the following elements:

1. Documents or tangible things (or their oral equivalents);

2. Prepared in anticipation of litigation or for trial;

3. By or for a party, or by or for that party's representative; and

4816-3515-7498

12

Case 3:20-cv-00666   Document 109   Filed 09/08/21   Page 12 of 16 PageID #: 1005

4. Not waived.[10]

*Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 221 (Tenn. Ct. App. 2002); Restatement (Third) of the Law Governing Lawyers § 87 (2000). With respect to consultants, the doctrine does not apply if the consultant is performing its normal business duties rather than acting in anticipation of litigation. *Schuh v. HCA Holdings, Inc.*, No. 3:11-1033, 2014 WL 12768360, *5-7 (M.D. Tenn. Sept. 16, 2014). In the Sixth Circuit, work product protection extends to materials prepared in reasonable anticipation of litigation, so long as one of the reasons the materials were prepared were for litigation. *United States v. Roxworthy*, 457 F.3d 590, 598-99 (6th Cir. 2006). This anticipation requirement contains both a subjective and objective component. *Id*. "Because documents are not protected if they were created for nonlitigation purposes, regardless of content, '[d]etermining the driving force behind the preparation of each requested document is therefore required in resolving a work product immunity question.'" *Id*. at 595.

In this case, the current privilege log for Kleinfelder is simply insufficient to demonstrate that the documents in question were prepared in anticipation or in connection with litigation, as opposed to during Kleinfelder's normal business of advising Colonial on pipeline relocations in general. Given that Colonial seeks its alleged increased costs of post-strike relocation as part of its damages in the -666 line strike case, this issue has significant implications for the litigation and the exposure of the two defendants in that case. Thus, AECOM supports MNAA's position and suggests that a reasonable sample of the disputed documents be reviewed in camera to determine

---

[10] Even if these elements are shown, the opponent may overcome such a showing as to fact work product by demonstrating substantial need and hardship. Fed. R. Civ. P. 26(b)(3). Because Colonial has not met its initial burden, the application of the need and hardship exception has not yet arisen. *See Biegas v. Quickway Carriers, Inc*., 573 F3d 365 (6th Cir. 2009). Opinion work product, reflecting the mental impressions, conclusions, opinions, and legal theories of counsel is generally not subject to the need and hardship exception. *Id*.
4816-3515-7498

"the driving force"—normal business of line relocation or litigation over a line strike—underlying those documents.

4. The parties certify that lead counsel for all parties conducted a meeting on September 3, 2021 and made a good faith effort to resolve each discovery dispute presented in this statement.

Respectfully submitted, this 8th day of September, 2021.

*/s/ Paul S. Davidson*
Paul S. Davidson (Tenn. BPR No. 011789)
Edward Callaway (Tenn. BPR No. 016016)
Michael C. Brett (Tenn. BPR No. 037290)
Waller Lansden Dortch & Davis LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Telephone: (615) 850-8942
Facsimile: (615) 244-6804
paul.davidson@wallerlaw.com
ed.callaway@wallerlaw.com
mike.brett@wallerlaw.com

*Attorneys for Metropolitan Nashville Airport Authority*

/s/ Jessalyn H. Zeigler
Jessalyn H. Zeigler (BPR No. 16139)
Robert E. Cooper, Jr. (BPR No. 10934)
L. Wearen Hughes (BPR No. 5683)
Brian M. Dobbs (BPR No. 25855)
Bass, Berry & Sims PLC
150 3rd Ave. S., Suite 2800
Nashville, TN 37201
Telephone: (615) 742-6200
Facsimile: (615) 742-6293
jzeigler@bassberry.com
bob.cooper@bassberry.com
whughes@bassberry.com
bdobbs@bassberry.com

*Attorneys for Colonial Pipeline Company*

/s/ Gary C. Shockley
Gary C. Shockley
Caldwell G. Collins
Baker, Donelson, Bearman,
Caldwell & Berkowitz, PC
211 Commerce St., Suite 800
Nashville, TN 37201
(615) 726-5600
gshockley@bakerdonelson.com
cacollins@bakerdonelson.com

*Attorneys for AECOM Technical Services, Inc.*

4816-3515-7498

15

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 8, 2021, this document was filed using the Court's electronic case management system which will send notice to:

    L. Wearen Hughes
    J. Andrew Goddard
    Brian M. Dobbs
    John S. Golwen
    Bass, Berry & Sims PLC
    150 3rd Ave. S., Suite 2800
    Nashville, TN 37201
    (615) 742-6200
    whughes@bassberry.com
    dgoddard@bassberry.com
    bdobbs@bassberry.com
    jgolwen@bassberry.com

    *Attorneys for Colonial Pipeline Company*

    Gary C. Shockley
    Caldwell G. Collins
    Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
    211 Commerce St., Suite 800
    Nashville, TN 37201
    (615) 726-5600
    gshockley@bakerdonelson.com
    cacollins@bakerdonelson.com

   *Attorneys for AECOM Technical Services, Inc.*

                                                 */s /Paul S. Davidson*