IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| COLONIAL PIPELINE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. 3:20-cv-00666 |
| v. | ) |
| | ) JUDGE CAMPBELL |
| METROPOLITAN NASHVILLE | ) MAGISTRATE JUDGE NEWBERN |
| AIRPORT AUTHORITY and AECOM | ) |
| TECHNICAL SERVICES, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM*

Pending before the Court is Defendant Metropolitan Nashville Airport Authority's ("MNAA") Partial Motion to Dismiss Colonial's Amended Complaint. (Doc. No. 35). Plaintiff Colonial Pipeline Company ("Colonial") filed a response in opposition (Doc. No. 45) and MNAA file a reply (Doc. No. 47).

For the reasons stated below, MNAA's Partial Motion to Dismiss will be **DENIED**.

### I.  BACKGROUND[1]

This case involves damage to a gasoline pipeline owned and operated by Plaintiff Colonial Pipeline Company ("Colonial") on property at the Nashville International Airport ("BNA"), operated by Defendant Metro Nashville Airport Authority ("MNAA"). Colonial's pipelines run through airport property pursuant to a 1976 easement agreement between Colonial and MNAA, the Dedication of Easement and Agreement ("the Easement Agreement. (Am. Compl., ¶ 8)). The

---

\*  This Memorandum corrects a typographical error in the Memorandum at Docket Entry No. 111.

1  The Facts in this section are as alleged in the Amended Complaint (Doc. No. 26). For ease of reference, the Court cites the Amended Complaint as "Am. Compl., ¶ __."

Easement Agreement gives Colonial the right to "construct, operate, maintain, repair, replace and inspect its liquid petroleum products pipeline" that is within the easement. (*Id*., ¶ 9).

On April 9, 2019, employees of the Tennessee Department of Transportation ("TDOT") struck Colonial Line 19, a gasoline pipeline located within the MNAA easement. When they struck the pipeline, TDOT was conducting soil borings in connection with planning for construction in and around the highway near the airport, which was in connection with expansion projects at the airport. (*Id*., ¶ 23, 35). This particular aspect of the project involved coordination between Colonial, TDOT, and MNAA, and MNAA's retained engineer, AECOM Technical Services, Inc. ("AECOM"). (*Id*., ¶¶ 36-39).

Permanent pipeline markers in the vicinity of the pipeline include a warning of a pipeline in the area and a notice to call Colonial before excavating. (*Id*., ¶ 30). In December 2019, in response to "One-Call" requests from TDOT and others, Colonial employees Christopher White and Donald Strickland marked the locations of Lines 19 and 20 with a combination of pin flags and paint but did not mark portions of the pipeline within a fenced area near the runway. (*Id*., ¶¶ 19, 21).

TDOT was conducting soil borings inside the fenced area when it struck Line 19. (*Id*., ¶ 35). As a result of the line strike, over 14,000 gallons of gasoline was released into surrounding soils, and Colonial was required to shut down operation of Line 19 for two days. (*Id*., ¶¶ 44, 45). The immediate response to the spill involved more than 200 people, including emergency responders from the airport and city police and fire departments, the Transportation Security Agency ("TSA"), the Environmental Protection Agency ("EPA"), the Tennessee Department of Environment and Conservation, TDOT, and the Tennessee Emergency Management Agency

("TEMA"). (*Id.*, ¶ 47). The cleanup and repair effort is ongoing, and the scope of the damage is yet undetermined. (*Id.*, ¶ 48).

The EPA determined that the incident resulted in "a discharge or substantial threat of discharge into navigable waters" under the Clean Water Act and advised Colonial, as the owner and operator of the pipeline, without regard to fault, of its potential liabilities and its obligation to undertake immediate removal action. (*Id.*, ¶ 52). Under the supervision and direction of the EPA, Colonial undertook removal action, which is ongoing. (*Id.*, ¶ 53).

Colonial asserts that responsibility for the pipeline strike lies with MNAA and/or its retained engineer AECOM. According Colonial's allegations, MNAA gave TDOT permission to conduct the soil borings and was involved in the soil borings either directly or through AECOM, its retained engineer. (*Id.*, ¶ 36). Colonial alleges TDOT asked MNAA to have a representative in the field to confirm it was reading the map correctly and that there were no known utilities in the area. (*Id.*, ¶ 37). Colonial claims MNAA provided inaccurate information to TDOT and/or AECOM regarding the location of the easement and pipeline, and MNAA and AECOM should have known they were relying on incorrect information, including inaccurate maps. (*Id.*, ¶¶ 39-41). In addition, Colonial argues MNAA and/or AECOM should have initiated another One-Call or contacted Colonial before digging because they knew or should have known they were near the vicinity of Line 19 and there were no indications that the pipeline had been marked inside the fenced area.

Colonial filed this case against MNAA and AECOM, alleging claims of breach of contract against MNAA (Count I), trespass and wrongful interference with easement against AECOM (Counts III and IV), and negligence and implied indemnity against both MNAA and AECOM (Count II and V). (Am. Compl., Doc. No. 26). Colonial also brings three claims for declaratory

3

judgment (Counts VI, VII, and VIII), seeking a judgment declaring that MNAA and AECOM are liable for the removal costs and damages under the Oil Pollution Act of 1990 ("OPA") and liable under the theories set forth in Counts I though VII.

MNAA moved to dismiss the breach of contract claim. (Doc. No. 35).

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), a court must take all the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

In considering a Rule 12(b)(6) motion, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to Defendant's motion to dismiss provided they are referred to in the Complaint and are central to the claims. *Bassett v. National Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir. 2008). Here, the Court has considered the Easement Agreement (Doc. No. 26-1), which is attached to the Amended Complaint and central to the claims.

## III. ANALYSIS

MNAA seeks dismissal of Plaintiff's breach of contract claim on grounds that Colonial has not alleged any facts to support the conclusion that MNAA breached a legal duty under the Easement Agreement. (Doc. No. 36 at 2).

4

The parties agree that Tennessee law applies to the Easement Agreement. (*See* Def. Memo, Doc. No. 36 at PageID# 319; Pl. Memo, Doc. No. 45 at PageID# 405;). To allege a breach of contract claim, a plaintiff must plead "the existence of a valid and enforceable contract, a deficiency in performance amounting to a breach, and damages cause by the breach." *Hixson v. Am. Towers, LLC*, 593 S.W.3d 699, 714 (Tenn. Ct. App. 2019) (citing *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011)).

Under Tennessee law, an easement agreement is a contract. *Id*. at 711. "[A]n easement carries rights and restrictions applicable to the owner of the easement (the dominant estate) and the owner of the property underlying and adjoining the easement (the servient estate)." *Id*. at 710 (internal citation omitted). In interpreting a contract, the court gives effect to the intent of the contracting parties according to the "usual, natural, and ordinary meaning" of the contractual language. *Id*. at 711. Where the words of a contract are clear and unambiguous the court must give effect to that plain meaning. *Id*.

Implied in every contract is a duty of good faith and fair dealing. *See TSC Industries, Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987); *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996). The purpose of the implied duty is to protect the parties reasonable expectations under the contract as well as their right to receive the benefit of their agreement. *See Barnes & Robinson Co., Inc. v. OneSource Facility Svcs., Inc.*, 195 S.W.3d 637, 642-43 (Tenn. Ct. App. 2006); *Dick Broadcasting Co., Inc. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 666 (Tenn. 2013). However, the duty of good faith and fair dealing is not a stand-alone claim and "does not extend beyond the agreed upon terms of the contract and the reasonable expectations of the parties." *Dick Broadcasting*, 395 S.W.3d at 653; *see also*, *Lamar Adv. Co. v. By-Pass Partners*,

313 S.W.3d 779, 791 (Tenn. Ct. App. 2009) (duty of good faith does not create new contractual rights or obligations).

MNAA concedes the existence of a valid and enforceable contract and that Colonial has alleged damages as a result of the alleged breach. (Doc. No. 36 at PageID# 319). MNAA contests only whether the facts alleged set forth a claim that MNAA's actions constituted a deficiency in performance amounting to a breach of the Easement Agreement. (*Id*.).

Colonial identifies two provisions of the Easement Agreement it claims were breached by MNAA. First, in the introductory section, the Easement Agreement provides that Colonial has the right to "construct, operate, maintain, repair, replace and inspect its liquid petroleum products pipeline" that is within the easement. (Am. Compl., ¶ 9 (citing Easement Agreement, p. 3)). Colonial contends that it could reasonably expect that MNAA would not take or allow any action that would adversely affect its "use and enjoyment of the pipeline" or "its rights, benefits, and expectations under the agreement." (Doc. No. 45 at PageID# 407). Colonial asserts that MNAA breached the Easement Agreement by acting or failing to act in a manner that caused the pipeline to be punctured – specifically, that MNAA either permitted or caused TDOT to conduct the soil borings, and provided incorrect information regarding the location of the easement and pipeline, resulting in damage to the pipeline. (*Id*. at PageID# 407-08).

Second, in the Easement Agreement, MNAA agreed to "prevent the use of the easement and real property which would interfere with or adversely affect the operation or maintenance of [BNA] or otherwise constitute an airport hazard." (Am. Compl., ¶ 10 (citing Easement Agreement, p. 8, ¶ 9)). Colonial alleges MNAA breached this provision of the Easement Agreement by allowing TDOT to conduct soil borings in the easement, which resulted in damage to the pipeline

6

and "created a hazard to persons, property, the environment, Colonial's operations, and airport operations." (Doc. No. 45 at PageID# 409 (citing Am. Compl., ¶¶ 46, 47, 56).

MNAA argues that nothing in the Easement Agreement imposes a duty to "prevent shutdowns or disruptions to Colonial's operation and maintenance of the pipeline." (Doc. No. 36 at 8). Specifically, MNAA asserts that the Easement Agreement "does not require the Airport to abstain from allowing third parties (in this case TDOT) to conduct soil test borings, does not impose a duty upon the Airport to call Colonial before a third party conducts soil test borings, and does not mandate the airport maintain any information – accurate or not – regarding [the] locations of Colonial's pipeline." (*Id*.). MNAA further argues that the Easement Agreement does not impose a "contractual duty to maintain Colonial's easement, warn Colonial of hazards, or otherwise prevent damage or avoid disruptions to Colonial's operations caused by the negligence of third parties." (*Id*. at 9).

MNAA argues that not only did it not have a contractual duty to prevent damage to the pipeline, maintenance of the easement is the responsibility of Colonial, not MNAA. (Doc. No. 36 at PageID# 321 (citing *Hixson*, 593 S.W.3d at 710)). While this is an accurate statement of law, Colonial's allegations are not that MNAA merely failed to prevent damage caused by others, but that MNAA actively participated in the damage by approving the soil borings. The allegations in this complaint are, therefore, distinguishable from the circumstances in *Hixson* where the landowner failed to warn easement holder of the condition of a hill and failed to promote growth of vegetation, thereby contributing to a mudslide which damaged the easement holder's cellular tower. *Hixson*, 593 S.W.3d at 710. Colonial does not argue that MNAA failed to maintain or repair the easement, but that MNAA acted in concert with TDOT to conduct the soil borings. (*See* Am.

7

Compl., ¶ 36 ("MNAA gave TDOT permission to conduct the soil borings, and MNAA, directly and/or through its retained engineer AECOM, was involved in the soil borings.")).

Moreover, MNAA's assertion that Colonial's claim for breach of contract is impermissibly based solely on a claim for breach of the duty of good faith and fair dealing rather than breach of a duty owed under the Easement Agreement does not find support in the allegations of the Amended Complaint. While Colonial does assert the implied duty of good faith and fair dealing, as discussed above, the Amended Complaint identifies specific provisions of the Easement Agreement that were allegedly breached by MNAA.

With regard to the provision of the Easement Agreement that requires MNAA to "prevent use of the easement and real property which would interfere with or adversely affect the operation or maintenance of the Nashville Metropolitan Airport or otherwise constitute an airport hazard," MNAA argues that this covenant is for the benefit of the Airport, and is not a duty owed to Colonial. (*See* Doc. No. 36 at PageID# 320, 325).

This argument is not supported by the language of the provision, which does not state that it is only for the benefit of the airport or may only be enforced by the airport. A reasonable construction of the plain language is that MNAA cannot use the easement or allow others to use the easement in a manner that will adversely affect airport operations or maintenance or constitute an airport hazard. Colonial has sufficiently pleaded facts to show that the pipeline puncture and resulting gasoline spill adversely affected the operation or maintenance of the airport or otherwise constituted an airport hazard and that MNAA did not prevent use of the easement that resulted in the spill. This is sufficient to state a claim for breach of the Easement Agreement.

MNAA also argues that the breach of contract claim "could have been, but was not, asserted as a cause of action for unreasonable interference with easement." (Doc. No. 36 at

PageID# 321). It contends Colonial brought the claim as a breach of contract "as a matter of legal gamesmanship" to avoid defenses and limitations on damages in tort actions against governmental entities[2] and to create a first material breach defense in a separate action pending before this court.[3] (Doc. No. 36 at PageID# 322). Colonial does not dispute that it could have brought a claim against MNAA for unreasonable interference with easement but argues that this is not relevant to the viability of its breach of contract claim. (Doc. No. 45 at PageID# 410).

The Court agrees. Under Tennessee law, parties to an easement agreement may choose to enforce the agreement through a claim for breach of contract. *See Hixson*, 593 S.W.3d at 714; *Columbia Gulf Transmission Co. v. Keller*, No. 3:08-cv-0195, 2009 WL 10728591, at *5 (M.D. Tenn. Feb. 27, 2009). Whether MNAA is entitled to defenses or limitations on damages will not be determined at this juncture.

## IV. CONCLUSION

For the reasons stated, MNAA's Partial Motion to Dismiss Colonial's Amended Complaint (Doc. No. 35) will be DENIED.

An appropriate Order will enter.

WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[2] *See* Government Tort Liability Act ("GTLA"), Tenn. Code Ann. § 29-20-403(b)(4) (providing a cap on damages for tort claims arising from injury to or destruction of property).

[3] *Metropolitan Nashville Airport Authority v. Colonial Pipeline Co.*, Case No. 3:20-cv-00809.